```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                          Index No. 13 Civ 375
OXFORD HEALTH INSURANCE, INC.,            (AKH, J.)(ECF Case)
OXFORD HEALTH PLANS (NY), INC.,
UNITED HEALTHCARE INSURANCE
COMPANY OF NEW YORK, INC., and
UNITED HEALTHCARE SERVICES, INC.,

                    Plaintiffs,

        -against-

DANIEL HAMNER, M.D., DANIEL HAMNER
PHYSICIAN, P.C., DANIEL HAMNER,
M.D., P.C., THE ESTATE OF ANNE M.
CHRISTOPHER, RICHARD HAMNER,
ERIKA MACBRIDE, RAINA HAMNER
and RAE BAYMILLER,

                    Defendants.

----------------------------------X
```

# REPLY BRIEF OF ESTATE OF ANNE M. CHRISTOPHER

```
                Richard Pu, Esq.
              120 E. 90th St., 10C
              New York, NY  10128
               (212) 427-3665 (o)
```

Table of Contents

Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


POINT I-- PLAINTIFFS FAILED TO SUE THE PROPER PARTY,
          AND THE PROPER PARTY WAS NOT PROPERLY SERVED . . . . 2

    1.  Plaintiffs Failed to Sue the Proper Party . . . . . . 2

    2.  The Former Executor was not Properly Served . . . . . 3


POINT II--    WITH RESPECT TO THE ESTATE, THE COMPLAINT
              FAILS TO STATE A § 1962(d) VIOLATION  . . . . . 5

    1.  Plaintiffs Alleged a Hub-and-Spoke Arrangement . . . 5

    2.  With a Hub-and-Spoke Fact Pattern, There is Neither a
        Single Conspiracy nor a RICO Enterprise . . . . . . . 6

    3.  The Complaint Fails to Allege that Anne Christopher
        Agreed to Commit Two Predicate Acts in Furtherance of
        any Conspiracy . . . . . . . . . . . . . . . . . . . 9

    4.  Plaintiffs Allege no Facts Making it Plausible that
        their Losses were Proximately Caused by Anne
        Christopher's Alleged Misconduct  . . . . . . . . . 11

POINT III--   WITH RESPECT TO THE ESTATE, THE COMPLAINT  FAILS
              TO STATE A § 1962(c) VIOLATION . . . . . . . . 13


POINT IV--    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
              JURISDICTION OVER THE STATE LAW CLAIMS . . . . 14


POINT V-- PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED
          . . . . . . . . . . . . . . . . . . . . . . . . . 15

    1.  Plaintiffs have Failed to Provide a Copy of the
        Proposed Amended Complaint . . . . . . . . . . . . 15

      2.     More Cogently, An Amendment Complaint would be a
Futility . . . . . . . . . . . . . . . . . . . . 16

Overview

Defendant Estate of Anne M. Christopher (the "Estate") submits this Reply Brief in further support of its motion to dismiss the Plaintiffs' Complaint for failure to state a claim. As shown below, the Estate's moving papers challenged Plaintiffs to identify allegations showing that the each of the members of the alleged conspiracy agreed to participate in what he knew to be a collective venture directed toward a common goal.

But Plaintiffs were only able to point to allegations that the members all belonged to the same employment group.  See discussion at p. 1, 7, infra.  But that doesn't show that they knew about the larger conspiracy or had agreed to participate in it.  Accordingly, under well-established law, the Complaint must be dismissed for failure to state a claim.

POINT I

PLAINTIFFS FAILED TO SUE THE PROPER PARTY,
AND THE PROPER PARTY WAS NOT PROPERLY SERVED

The Estate's initial brief showed that the Estate must be sued by suing the former executor, Allan Christopher, 4/18/13 Estate's Initial Brf. ("Estate's Brf.") 10-11, and that the Allan Christopher was not properly served.  Id. 11.

1.   Plaintiffs Failed to Sue the Proper Party

In response, Plaintiffs don't appear to dispute that the proper party is the former executor of the estate, and not the estate itself.  5/21/13 Plaintiffs' Opposing Brief ("Pl. Opp. Brf.") 27-30.  Rather, Plaintiffs argue that suing the Estate was merely a matter of misnaming a party.  Id. 28-29.

But this wasn't a case of suing the right party but under an incorrect name; rather it was a case of suing the wrong party. For example, in Rivers v. Genesis Holding LLC, 11 Misc.3d 647, 648, 812 N.Y.S.2d 301, 303 (Sup. Ct. N.Y. Co. 2006), when the plaintiff died, and her executor had to be substituted in her place, the court regards the distinction between the executor and the estate as a distinction between parties, rather than regarding both as the same party going by different names:

"Because the death of plaintiff's decedent divested

> this court of jurisdiction until a substitution of the
> proper party occurred under CPLR 1015(a) [cites
> omitted] the action was placed on the stay calendar on
> September 7, 2004. The proper party is not the
> decedent's estate but rather the legal representative
> of the estate (here the administratrix)."

See also, In re: Estate of Harris, 21 Misc.3d 239, 241-42, 862 N.Y.S.2d 898, 900 (Surr. Ct. Bronx Co. 2008)("when attorneys state they are appearing on behalf of an estate, such a statement is technically incorrect because the attorney is representing the personal representative of the estate, and not the estate itself")(emphasis supplied); 100 West 72nd Street Associates v. Murphy, 144 Misc.2d 1036, 1040, 545 N.Y.S.2d 901, 904 (Civ. Ct. N.Y. Co. 1989)("An estate is not a legal entity and any action for or against the estate must be by or against the executor or administrator in his or her representative capacity.").

Thus, this wasn't a situation of suing the right party under an incorrect name, but rather suing the wrong party. Accordingly, Plaintiffs have failed to include a necessary party, and Complaint must be dismissed.

2.   The Former Executor was not Properly Served

With respect to service, Plaintiffs contend that the former executor was properly served under Conn. Gen. Stats. § 52-61, Pl. Brf. 27-28, which provides for service on executors of estates.

3

But in quoting § 52-61, Plaintiffs have omitted crucial text which limits it to actions where the executor himself is accused of wrongdoing.  <u>Compare</u> Pl. Brf. 27-28 <u>with</u> § 52-61, Reply Appendix ("Reply A.") A. 1 (quoted below).

> In particular, §52-61 provides:
>
> "Process in civil actions against a nonresident executor ... in his representative capacity, or in his individual capacity in any action <u>founded upon or arising from his acts or omissions as such executor</u> ... may be served by leaving a true and attested copy thereof with the judge of the probate in the district where the estate is in settlement."  § 52-61, Reply A. 1 (emphasis supplied).

Here, of course, the former executor is not accused of wrongdoing himself, and thus, § 52-61 does not apply.  Accordingly, the former executor was not properly served, and the action must be dismissed as to the Estate.

POINT II

## WITH RESPECT TO THE ESTATE, THE COMPLAINT FAILS TO STATE A § 1962(d) VIOLATION

The Estate's initial brief showed that the Complaint alleged a hub-and-spoke arrangement, with Hanmer at the hub and his family members or a business associate as the spokes, Estate's Brf. 3 et seq., but that no facts were alleged indicating that the "spokes" had knowledge of each other or had agreed to participate in what each "spoke" knew to be a collective venture directed toward a common goal. Id. 5-6.  That is, to use the phrase found in the caselaw, the wheel had no "rim".

The Estate further showed that, against that backdrop, Plaintiffs alleged only a single violation of the RICO statute--namely, a violation of § 1962(d).  Estate's Brf. 12.  That brief also showed that the violation has only two elements:

> "The RICO conspiracy charge is proven if the defendant [1] "embraced the objective of the alleged conspiracy," and [2] agreed to commit two predicate acts in furtherance thereof."

U.S. v. Viola, 35 F.3d 37, 43 (2nd Cir. 1994)(brackets), quoted at Estate Brf. 9.  Plaintiffs' responses are addressed below.


1.   Plaintiffs Alleged a Hub-and-Spoke Arrangement

Plaintiffs respond first that the Estate inaccurately argues

5

that Plaintiffs had alleged a "hub-and-spoke" arrangement.  But that's refuted by the allegations of the Complaint:

- at Hamner's request, each of the "spoke" members signed forms attesting to being employees of his medical practice, Estate Brf. 4;

- there are no allegations that the "spoke" members spoke to each other about the scheme or even knew about the other spoke members' dealings with Hamner, id. 5;

- Hamner was the only person who made the key decisions-- such as what to bill-- and was the only person who had communications with Plaintiffs, id. 4-5; and

- only Hamner received any substantial benefit from the scheme, id. 4.

Such allegations make it impossible to deny that the Court is faced with a hub-and-spokes fact pattern.

2. With a Hub-and-Spoke Fact Pattern, There is Neither a Single Conspiracy nor a RICO Enterprise

And with a hub-and-spoke fact pattern, there is neither a single conspiracy nor a RICO enterprise. Estate Brf. 15-17, citing, Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 1243 (1946); United States v. Maldonado-Rivera, 922 F.2d 934, 963 (2nd Cir. 1990)("The essence of any conspiracy is, of course, agreement, and "in order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed

6

toward a common goal.")(emphasis supplied); <u>United States v. Eppolito</u>, 543 F.3d 25, (2nd Cir. 2008)("'[I]n order to prove a single conspiracy,' " rather than multiple conspiracies, " 'the government must show that each alleged member agreed to participate <u>in what he knew to be a collective venture directed toward a common goal.</u>' ")(emphasis supplied); <u>First Nationwide Bank v. Gelt Funding, Corp</u>., 820 F.Supp. 89, 97 (S.D.N.Y. 1993)(hub-and-spoke arrangement not a conspiracy); <u>Merrill Lynch Futures v. Kelly</u>, 585 F.Supp. 1245, 1254 (S.D.N.Y. 1984)("It is enough that all conspirators participate in <u>a common scheme knowing of its nature and of the interdependence of its members</u>")(emphasis supplied).[1]

In an attempt to distinguish such caselaw, Plaintiffs contend that the "spoke" members were connected to each other. In particular, Plaintiffs contend:

"the Employee Member Defendants all purported to be

---

[1] This Court's decision in <u>New York Automobile Ins. Plan v. All Purpose Agency & Brokerage, Inc.</u>, 1998 WL 695869 (S.D.N.Y.), is directly on point. There, an insurance broker induced a number of unrelated car owners to submit fraudulent applications for insurance benefits. This Court called that fact pattern "a classic 'hub and spoke' conspiracy", and held:

"Such a scheme is not one true common law conspiracy nor is it a RICO enterprise."

See discussion at Estate Brf. 17. Accordingly, Plaintiffs have failed to allege either the "conspiracy" nor the "enterprise" required by § 1962(d).

this

> Hamner's employees and were thereby all enrolled in the same group health insurance plan. (Complaint, ¶¶92-115)," Pl. Brf. 25;
>
> "Here, by virtue of being members of the same employer group, the Employee Member Defendants were clearly connected to each other, and accordingly were not merely connected by "spokes" to the same "hub.", id. 25;
>
> "all of the Employee Member Defendants are purportedly employed by the same company... Accordingly, these Employee Member Defendants did, in fact, have connections with each other beyond their individual actions undertaken to perpetrate Hamner's scheme to defraud Plaintiffs;" id. 25-26.

But, needless to say, it's a non sequitur to contend that, because individuals purport to be part of the same employer group, they had knowledge of the broader scheme and had agreed to advance it.

> And as Plaintiffs acknowledge, such knowledge is critical:
>
> "the Second Circuit has interpreted 18 U.S.C. § 1962(d) to impose liability for conspiracy based on a conspirator's knowledge of the general nature of the conspiracy".

Pl. Brf. 24 (emphasis supplied), citing "United States v. Yannotti, 541 F.3d 112 (2008); U.S. v. Zichettello, 208 F.3d 72, 99 (2d Cir. 2000). And as Plaintiffs themselves acknowledge, U.S. v. Ziochetqtello, supra, held that:

> "analysis of liability under 18 U.S.C. § 1962(d) requires to court to "inquire only whether an alleged conspirator knew what the other conspirators 'were up to' or whether the situation would logically lead an alleged conspirator 'to suspect he was part of a larger enterprise'".

8

Pl. Brf. 24.  Here, the Complaint lacks facts showing that "an alleged conspirator knew what the other conspirators 'were up to'".

Thus, Plaintiffs' own cases expose the Complaint's achilles heel: Plaintiffs allege no facts showing that the "spoke" defendants had knowledge of the broader scheme and sought to advance it.  Accordingly, Plaintiffs have failed to allege the "conspiracy" or "enterprise" elements of a § 1962(d) violation.

3. The Complaint Fails to Allege that Anne Christopher Agreed to Commit Two Predicate Acts in Furtherance of any Conspiracy

The Estate's initial brief also showed that the Complaint fails to allege facts establishing the second element of a § 1962(d) violation-- Anne Christopher's agreement to commit two predicate acts in furtherance of any conspiracy.  Estate Brf. 17-19.  For example, the Estate's initial brief showed that insufficient facts were alleged to show plausibly the falsity of the forms signed by Anne Christopher, her scienter, or her agreement to use the wires or mails.  Id.

In response, Plaintiffs assert:

> "Christopher signed enrollment forms misrepresenting that she was an employee of Hamner, P.C. and therefore eligible to enroll in the Plan. (Complaint, ¶¶ 92-94)".
> Pl. Brf. 16.

But this allegation fails to satisfy Twombly's plausibility

requirement.

First, with respect to falsity, all Plaintiffs allege is that Hamner failed to present W-2 forms for the years Anne Christopher claimed to be enrolled in the Plan. Compl. ¶ 96, A. 15. But we don't know what Hamner was asked to produce W-2 forms, whether he was willing to cooperate with Plaintiffs' request, and whether he had access to the forms. So Twombly's plausibility test has not been satisfied.

Plaintiffs also respond that they allege asking Hamner provide documents proving Anne Christopher's employment. Pl. Brf. 21. But no facts are alleged to show that Hamner was asked to provide W-2s, that he even kept the W-2s, or that he was inclined to cooperate with Plaintiff's requests.

Second, with respect to scienter, the Complaint doesn't allege that Anne Christopher read the forms, and understood them. Compl. ¶¶ 92-94. When asked to sign the forms, their contents may have been misstated to her, and she may simply have signed them without reading them. Thus, the allegations as to scienter fail both Twombly's plausibility test as well as the requirement of Rule 9(c) of the Federal Rules.

Plaintiffs respond that Anne Christopher received the acupuncture without objection, that she didn't respond to Plaintiff's queries about her eligibility for coverage, and that

she failed to volunteer that she was married to Hamner.  Pl. Brf. 22.  But those events occurred after she signed the forms, and don't address whether at the time of the signing, Anne Christopher knew she was engaged in a misrepresentation.

In making the aforementioned response, Plaintiffs rely on caselaw holding that one who signs a contract is presumed to know its contents.  Pl. Brf. 23.  But we're not talking about breach of contract.  Rather, we are talking about fraud, where the law requires proof of scienter, and the presumptions of contract law simply don't apply.

Third, the Complaint fails to allege that Anne Christopher agreed to use the wires or mails.  To the contrary, the Complaint alleges that it was only <u>Hamner</u> who communicated with Plaintiffs.  To this, Plaintiffs make no response.  Pl. Brf. 22-23.  Thus, in this respect as well, the Complaint fails <u>Twombly</u>'s plausibility test.

4. Plaintiffs Allege no Facts Making it Plausible that their Losses were Proximately Caused by Anne Christopher's Alleged <u>Misconduct</u>

The Estate's initial brief also showed that the Complaint failed to allege facts making it plausible that Anne Christopher's acts caused Plaintiffs' losses.  Estate Brf. 19-21.  Anne's own conduct caused Plaintiff's no loss: as Plaintiffs

11

admit, she applied for coverage for acupuncture, which Plaintiffs denied.  Compl. ¶¶ 58-59, A. 9.

Plaintiffs' losses, according to them, resulted from Hamner lying about what services he had performed, Hamner submitting claims fo $3 million, and Hamner receiving nearly $3 million compensation for the supposed services.  Estate Brf. 19-22.  Thus, Hamner's deceit, and not Anne Christopher's signing of the forms, caused the loss.  That deceit by Hamner was an intervening cause, and was the proximate cause of Plaintiffs' alleged loss.  By the same token, Anne Christopher's alleged actions did not cause the harm Plaintiffs allege.

Plaintiffs fail to respond the Estate's contention.  Accordingly, Plaintiffs appear to acknowledge that they have failed to allege facts showing that Anne Christopher's alleged misdeeds cause Plaintiffs' alleged losses.  Accordingly, the Complaint fails to allege loss proximately caused by Anne Christopher's conduct, and must be dismissed as to her.

POINT III

WITH RESPECT TO THE ESTATE, THE COMPLAINT
<u>FAILS TO STATE A § 1962(c) VIOLATION</u>

The Estate's moving brief also showed that, even though the Complaint didn't allege a violation of § 1962(c), the Complaint fails to allege facts showing the essential elements of such a violation.  Estate Brf. 23-28.

In response, Plaintiffs don't contend that they allege a violation of § 1962(c).  Thus, the issues pertaining to a § 1962(c) violation are moot.

POINT IV

THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
JURISDICTION OVER THE STATE LAW CLAIMS

The Estate's initial brief showed that, when the sole federal cause of action is dismissed early in the litigation, the presumption is that the Court will not exercise supplemental jurisdiction over the state law claims. Estate Brf. 29. Plaintiffs don't dispute that. Pl. Brf. 30.

Thus, if the RICO claim is dismissed as to all Defendants, the Court should decline to exercise supplemental jurisdiction over the state law claims.

POINT V

PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs request that, if their RICO claim is dismissed, they be given leave to amend.

1. Plaintiffs have Failed to Provide a Copy of the Proposed Amended Complaint

However, Plaintiffs' request can not be considered now, since, typically, a court will deny a motion to amend unless the movant supplies a copy of the proposed amended pleading. See Rosendale v. Iuliano, 67 Fed.Appx. 10, 14 (2nd Cir. 2003); Rosedale v. Brusie, 347 F.Appx. 195, 198 (2nd Cir. 2010); Gulley v. Dzurenda, 264 F.R.D. 34, 36 (D.CT. 2010). See also, United States v. United Health Group, Inc., 659 F.3d 295, 315 (3rd Cir. 2011)(moving to amend without attaching amended complaint not the proper method); In re: Lord Abbett Mutual Funds Fee Litigation, 417 F.Supp.2d 624, 628 (D. NJ. 2005)(court may deny motion if draft amended complaint not attached); Clonlara, Inc. v. Runkel, 722 F.Supp. 1442, 1449 (E.D. MI 1989)(copy of proposed amended pleading must be submitted)(gathering cases).

That's because, for one thing, the court needs the proposed pleading to assess whether amendment would be futile:

> "Moreover, Rosendale's failure to submit a proposed amended pleading with his post-judgment motion

15

>   prevented the district court from considering the
>   constitutional and procedural issues implicated by his
>   First Amendment retaliation claim.... Without a
>   proposed pleading, the district court could not
>   determine whether Rosendale's claim could survive a
>   motion to dismiss, whether it was futile, or whether it
>   was frivolous."

Rosendale v. Iuliano, supra, 67 Fed.Appx. at 14; Gulley v. Dzurenda, supra, 264 F.R.D. at 36.

In addition, failure to supply the proposed pleading is deemed to reflect a lack of diligence and good faith.  State Trading Corporation of India v. AssuranceForEningen Skuld, 921 F.2d 409, 418 (2nd Cir. 1990); Gulley v. Dzurenda, supra, 264 F.R.D. at 36.  Accordingly, Plaintiffs should be denied leave to amend.


2.   More Cogently, An Amendment Complaint would be a Futility

More cogently, an amendment complaint would be a futility. Plaintiffs can't obviate the hub-and-spoke nature of the fact pattern.  And as noted above, such a fact pattern prevents Plaintiffs from establishing an enterprise or a conspiracy. According, an amendment would be a futility, and Plaintiffs must be denied leave to amend.

16



Dated: New York, NY
      June 11, 2013

                                            Richard Pu

                                       Attorney for Estate
                                       of Anne Christopher
                                       120 E. 90th St., 10C
                                       New York, NY 10128
                                       (212) 427-3665 (o)