UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
OXFORD HEALTH INSURANCE, INC.,
OXFORD HEALTH PLANS (NY), INC.,
UNITED HEALTHCARE INSURANCE
COMPANY OF NEW YORK, INC. and
UNITED HEALTHCARE SERVICES, INC.

                              Plaintiffs,

        - against -

DANIEL HAMNER, M.D., DANIEL HAMNER
PHYSICIAN, P.C., DANIEL HAMNER, M.D., P.C.,
THE ESTATE OF ANNE M. CHRISTOPHER,
RICHARD HAMNER, ERIKA MACBRIDE,
RAINA HAMNER and RAE BAYMILLER,

                              Defendants.
-------------------------------------------------------------------x

Civil Action No.
13-CV-375 (AKH) (KNF)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

KAUFMAN BORGEEST & RYAN LLP
*Attorneys for Defendants*
*Daniel Hamner, M.D., Daniel Hamner Physician,*
*P.C., Daniel Hamner, M.D., P.C., Richard Hamner,*
*Erika Macbride, Raina Hamner, and Rae Baymiller*
120 Broadway, 14th Floor
New York, New York 10271
(212) 980-9600
KBR File No.: 862.216

Of Counsel:

    Jonathan B. Bruno, Esq.
    Alex N. Niederman, Esq.

2315761

## TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES ...................................................................................ii-iv

PRELIMINARY STATEMENT.............................................................................1-2

PROCEDURAL HISTORY..................................................................................2

FACTUAL ALLEGATIONS ................................................................................2-4

LEGAL STANDARD FOR MOTION TO DISMISS .............................................4-5

POINT I    PLAINTIFF FAILS TO STATE A CAUSE OF ACTION AGAINST RICHARD, ERIKA, RAINA, AND BAYMILLER PURSUANT TO RICO SECTION 1962(c) – CONDUCTING OR PARTICIPATING IN A RICO ENTERPRISE'S AFFAIRS........................................................................5-12

POINT II   PLAINTIFF FAILS TO STATE A CAUSE OF ACTION AGAINST THE MOVING DEFENDANTS PURSUANT TO RICO SECTION 1962(d) – RICO CONSPIRACY ..............................................................................12-15

POINT III  THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS AGAINST RICHARD, ERIKA, RAINA, AND BAYMILLER.............................................15-16

CONCLUSION....................................................................................................16

2315620

## TABLE OF AUTHORITIES

Pages

### Cases

Allstate Ins. Co. v. Etienne,
2010 WL 4338333, *5 (E.D.N.Y. 2010) ...................................................................13

Allstate Ins. Co. v. Rozenberg,
590 F.Supp.2d 384 (E.D.N.Y. 2008) ......................................................................13

Arista Records, LLC v. Doe 3,
604 F. 3d 110 (2d Cir. 2010) .....................................................................................4

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ...................................................................................................4

Atkins v. County of Orange,
251 F. Supp.2d 1225 (S.D.N.Y. 2003) ......................................................................5

Baisch v. Gallina,
346 F.3d 366, 376 (2d Cir. 2003) ..............................................................................6

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ..............................................................................................4, 5

Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.,
832 F.Supp. 585 (E.D.N.Y. 1993) ........................................................... 8, 9, 10, 12

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,
187 F.3d 229 (2d Cir. 1999) ....................................................................................13

Davis v. County of Nassau,
355 F. Supp.2d 668 (E.D.N.Y. 2005) ........................................................................5

Dietrich v. Bauer,
76 F.Supp.2d 312 (S.D.N.Y. 1999) ........................................................................7, 9

In re Motel 6 Securities Litigation,
161 F.Supp.2d 227 (S.D.N.Y. 2001) ......................................................................7, 9

Goldfine v. Sichenzia,
118 F.Supp.2d 392 (S.D.N.Y. 2000) ......................................................... 8, 9, 10, 12

In re Motel 6 Securities Litigation,
161 F.Supp.2d 227 (S.D.N.Y. 2001) ......................................................................7, 9

Lutin v. New Jersey Steel Corp.,
122 F.3d 1056 (2d Cir. 1997) ...................................................................................5

2315620

Medinol Ltd. v. Boston Scientific Corp.,
346 F.Supp.2d 575 (S.D.N.Y. 2004) ................................................................15

Moss v. Morgan Stanley Inc.,
719 F.2d 5, 17 (2d Cir. 1983) ...........................................................................5

Panix Promotions, Ltd. v. Lewis,
2002 WL 72932 (S.D.N.Y. 2002) .....................................................................15

Redtail Leasing, Inc. v. Bellezza,
1999 WL 32941 (S.D.N.Y. 1999) ...................................................................7, 9

Reves v. Ernst & Young,
507 U.S. 170 (1993) ................................................................ 5, 6, 7, 8, 9, 12

Rogers v. U.S.,
340 U.S. 367 (1951) ......................................................................................15

Salinas v. U.S.,
522 U.S. 52 (1997) ........................................................................................13

Soanes v. Empire Blue Cross/Blue Shield,
970 F.Supp. 230 (S.D.N.Y. 1997) ..............................................................10, 11

Smith v. Local 819 I.B.T. Pension Plan,
291 F.3d 236, 240 (2d Cir. 2002) .....................................................................5

Tenamee v. Schmukler,
438 F.Supp.2d 438 (S.D.N.Y. 2006) .................................................................5

Tribune Co. v. Purcigliotti,
869 F.Supp. 1076 (S.D.N.Y. 1994) .............................................................11, 12

U.S. v. Diaz,
176 F.3d 52 (2d Cir. 1999) ............................................................................6, 8

U.S. v. Eppolito,
543 F.3d 25 (2d Cir. 2008) .............................................................................15

U.S. v. Garcia,
282 Fed.Appx. 14 (2d Cir. 2008) ......................................................................7

U.S. v. Green,
421 F.2d 1237 (2d Cir. 1970) ..........................................................................15

U.S. v. Maldonado-Rivera,
922 F.2d 934 (2d Cir. 1990) ............................................................................14

U.S. v. Persico,
832 F.2d 705, 714 (2d Cir. 1987) .....................................................................13

2315620

United States v. Viola,
35 F.3d 37 (2d Cir.1994) ............................................................11

U.S. v. Yannotti,
541 F.3d 112 (2d Cir. 2008) .....................................................13

**Statutes**

18 U.S.C. §1962(c) ............................................... 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12

18 U.S.C. §1962(d) ............................................................1, 2, 4, 12, 13, 15

28 U.S.C. §1367 .............................................................................17

2315620

## PRELIMINARY STATEMENT

Defendants Daniel Hamner, M.D. ("Dr. Hamner"), Daniel Hamner Physician, P.C. and Daniel Hamner, M.D., P.C. (both entities collectively, "the Practice"),[1] Richard Hamner ("Richard"), Erika Macbride ("Erika"), Raina Hamner ("Raina"), and Rae Baymiller ("Baymiller") (collectively, the "Moving Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint[2] by Plaintiffs Oxford Health Insurance, Inc. and Oxford Health Plans (NY), Inc. (collectively "Oxford"), Plaintiff United Healthcare Insurance Company of New York, Inc. ("UHIC"), and Plaintiff United Healthcare Services, Inc. ("UHS") (all four collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a cause of action.

This action arises out of Plaintiffs' claim that Dr. Hamner fraudulently enrolled Richard, Erika, Raina, Baymiller, and his former wife, Anne M. Christopher ("Anne"),[3] in the Practice's health insurance plan ("the Health Plan") by falsely claiming that they were employees of the Practice. Plaintiffs claim that Dr. Hamner then conspired with his co-Defendants to submit false insurance claims for medical treatment that was never rendered to them. Plaintiffs assert a number claims under New York State law, as well as federal claims pursuant to Sections 1962(c) and 1962(d) the Racketeer Influenced and Corrupt Organizations Act ("RICO").

The Court should dismiss Plaintiffs' Eighth, Ninth, Tenth, and Eleventh purported causes of action – RICO Section 1962(c) claims (the "Conducting or Participating Claims") asserted against Richard, Erika, Raina, and Baymiller respectively – as Plaintiffs fail to allege that those

---

[1] "Daniel Hamner Physician P.C." and "Daniel Hamner M.D. P.C." are the same entity. Filings with the New York Department of State confirm that the Practice was established on May 1, 2000 as a domestic professional corporation named "Daniel Hamner Physician P.C.," and was renamed as "Daniel Hamner, M.D. P.C." on June 6, 2001. Plaintiffs also acknowledge this in Paragraph "7" of the Amended Complaint.

[2] Annexed to the Affidavit of Jonathan B. Bruno as Exhibit A.

[3] Anne is deceased, and "Allan Christopher as Executor for the Estate of Anne M. Christopher" is a defendant in the Amended Complaint. Counsel for the Moving Defendants does not represent the Allan Christopher or the Estate and this motion is not being made on their behalf.

Defendants conducted or participated, directly or indirectly, in the affairs of a RICO enterprise. See 18 U.S.C. §1962(c).[4]

The Court should dismiss Plaintiffs' Twelfth purported cause of action – a RICO Section 1962(d) claim (the "RICO Conspiracy Claim") – as to all of the Moving Defendants, as Plaintiffs fail to allege that the Moving Defendants collectively agreed and conspired to commit the acts of racketeering alleged in the Complaint.  That is, Plaintiffs have failed to adequately allege a RICO conspiracy because Plaintiffs do not allege that each Moving Defendant was aware of what his purported co-conspirators were doing.

The Court should also decline to exercise supplemental jurisdiction over Plaintiffs' Fifth purported cause of action, fraudulent enrollment in the Health Plan, as to Richard, Erika, Raina, and Baymiller.

## PROCEDURAL HISTORY

Plaintiffs commenced this action by filing a Complaint on January 16, 2013.  See ECF Docket Entry #1.  All of the Defendants moved to dismiss the Complaint, and the Court held oral argument on July 30, 2013.  The Court partially granted the Defendants' motions to dismiss, but also granted Plaintiff leave to replead.  Accordingly, Plaintiffs filed an Amended Complaint on August 9, 2013.  See Amended Complaint, annexed to the Affidavit of Jonathan B. Bruno as Exhibit A.  On August 22, 2013, the Court issued an Order granting Defendants until September 4, 2013 to file motions to dismiss the Amended Complaint.

## FACTUAL ALLEGATIONS

Plaintiffs are a group of health insurance companies and HMOs that claim to have been defrauded by Defendants into making payments for medical care that should not have been covered under the Practice's health plan ("the Health Plan") offered to Defendants.  Plaintiffs

---

[4] Plaintiffs also assert a Section 1962(c) claim against Dr. Hamner as their Sixth purported cause of action, but Dr. Hamner is not seeking dismissal of that claim at this time.

2301656

allege that Dr. Hamner fraudulently enrolled his former wife Anne,[5] his brother Richard, Richard's wife Erika, Richard and Erika's daughter Raina, and his friend/business associate Baymiller in the Health Plan by having them submit enrollment forms falsely stating that they were employees of the Practice. See Amended Complaint at ¶5-12 (identifying parties); ¶102-130, 189-197, 204-206, 218-220, 236-238, 247-249, 258-260, 270-272 (alleging fraudulent enrollment). After completing the purported fraudulent enrollment, Dr. Hamner allegedly performed non-medically necessary, non-covered, acupuncture on unnamed persons receiving health insurance from Plaintiffs, and obtained insurance coverage for the procedures by allegedly submitting false claim forms to Plaintiffs which stated that Dr. Hamner was actually performing insurance-covered procedures of trigger point injections, tendon sheath injections, ultrasound therapy, electrical stimulation therapy, and osteopathic manipulation. Id. at ¶67-73, 75-79, 164-165. Plaintiffs allege that as a result of this purportedly fraudulent scheme, Oxford and UHIC made payments to Dr. Hamner for the above-referenced treatments. Id. at ¶80-81. Plaintiffs do not allege that UHS made any payments. Id.

Plaintiffs also allege that Dr. Hamner was an out-of-network healthcare provider under the Health Plan, but "routinely waived the collection of some or all deductible and/or coinsurance payments... to induce members to be treated by him, instead of by an in-network provider with whom Plaintiffs already had a contract." Id. at ¶83. Plaintiffs allege that in waiving these deductibles and copayments, Dr. Hamner reduced the amount he was willing to accept as "payment in full" for the services rendered, but nonetheless, still submitted claims to Plaintiffs for the full value of the services rendered including the deductibles and copayments he waived. Id. at ¶84. Plaintiffs allege that this caused them to overpay Dr. Hamner, but that he kept the money. Id. at ¶88-90. Plaintiffs further claim that as part of this alleged scheme, Anne, Richard, Erika, Raina, and Baymiller refused to advise Oxford that they had not received the services for

---

[5] Anne is deceased and "Allan Christopher as Executor for the Estate of Anne M. Christopher" is a defendant in the Amended Complaint. Counsel for the Moving Defendants does not represent the Allan Christopher or the Estate and this motion is not being made on their behalf.

2301656

which Oxford paid. Id. at ¶138.   Additionally, Plaintiffs claim that Dr. Hamner improperly received reimbursement for prescriptions that he wrote for himself. Id. at ¶160-161.

Plaintiffs filed an Amended Complaint on August 9, 2013, 2013, asserting twelve purported causes of action in connection with the alleged scheme.   There are five purported causes of action under New York State law: (1) fraudulent misrepresentation of services rendered, as to Dr. Hamner and the Practice (Id. at ¶162-174); (2) fraudulent misrepresentation of billed charges, as to Dr. Hamner and the Practice (Id. at ¶175-181); (3) negligent misrepresentation, as to Dr. Hamner and the Practice (Id. at ¶182-185); (4) unjust enrichment, as to Dr. Hamner and the Practice (Id. at ¶186-188); (5) fraudulent enrollment in the Health Plan, as to all Defendants (Id. at ¶189-197).

Plaintiffs assert seven purported causes of action under federal law, all pursuant to RICO.   Plaintiffs assert six separate claims against the individual Defendants for allegedly conducting and/or participating in an enterprise's affairs through a pattern of racketeering activity, pursuant to 18 U.S.C. §1962(c) (collectively, the "Conducting and Participating Claims"). Id. at ¶198-215 (Dr. Hamner), ¶216-233 (Anne), ¶234-244 (Richard), ¶245-255 (Erika), ¶256-266 (Raina), and ¶267-280 (Baymiller).   Plaintiffs also assert a RICO conspiracy claim against all Defendants pursuant to 18 U.S.C. §1962(d) (the "RICO Conspiracy Claim").   Id. at ¶281-300.

## LEGAL STANDARD FOR MOTION TO DISMISS

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is whether the plaintiff has pleaded sufficient facts so as "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).   This does not mean that a plaintiff must plead specific facts, but only that the complaint gives a defendant "fair notice" of the claim against him and the grounds for that claim. Erickson v. Pardus, 551 U.S. 89 (2007); See also Arista Records, LLC v. Doe 3, 604 F. 3d 110, 119-20 (2d Cir. 2010) (accord).   Yet a complaint must be dismissed when it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal,

4

556 U.S. 662 (2009) (citing Twombly, 550 U.S. at 555).  Courts must dismiss complaints that offer only "'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557); Davis v. County of Nassau, 355 F. Supp.2d 668, 673 (E.D.N.Y. 2005) ("'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss,'" quoting Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)); Atkins v. County of Orange, 251 F. Supp.2d 1225, 1230 (S.D.N.Y. 2003).

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF FAILS TO STATE A CAUSE OF ACTION AGAINST RICHARD, ERIKA, RAINA, AND BAYMILLER PURSUANT TO RICO SECTION 1962(c) – CONDUCTING OR PARTICIPATING IN A RICO ENTERPRISE'S AFFAIRS

In order to successfully state a private cause of action pursuant to RICO, a plaintiff must satisfy *two* pleading burdens.  A plaintiff must allege: (1) the defendant's violation of the substantive criminal RICO statute, 18 U.S.C. §1962; and (2) damage to plaintiff's business or property caused by the defendant's alleged Section 1962 violation.  See Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983); Lutin v. New Jersey Steel Corp., 122 F.3d 1056, *5 (2d Cir. 1997); Tenamee v. Schmukler, 438 F.Supp.2d 438, 446-7 (S.D.N.Y. 2006).

Here, Plaintiffs have asserted purported causes of action against Richard, Erika, Raina, and Baymiller pursuant to Section 1962(c),[6] which states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, **to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs** through a pattern of racketeering activity or collection of unlawful debt.

See 18 U.S.C. §1962(c) (emphasis added).  In Reves v. Ernst & Young, 507 U.S. 170 (1993), the United States Supreme Court addressed the meaning of the Section 1962(c) phrase "to

---

[6] See Amended Complaint Eighth, Ninth, Tenth, and Eleventh purported causes of action.

2301656

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." The Supreme Court concluded that "conduct," as a noun or verb, "requires an element of direction," and that "participate" means "to take part in." Id. at 178-9. Thus, the Supreme Court concluded, "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in *directing those affairs*." Id. at 179 (emphasis added).

The Supreme Court further explained that RICO's legislative history is consistent with this conclusion, and supports a so-called "operation or management test" for Section 1962(c) liability. Id. at 179-184. The Supreme Court explained that by applying such a test, "Section 1962(c) cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs, *not just their own affairs*." Id. at 185 (emphasis added). The Supreme Court concluded that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, §1962(c), one must participate in the operation or management of the enterprise itself." Id.

The Second Circuit Court of Appeals has been instructive in how to apply the Reves "operation or management test" for Section 1962(c) liability. In U.S. v. Diaz, 176 F.3d 52, 92 (2d Cir. 1999), the Second Circuit held that a court must look not at whether a defendant held a "managerial role" in the enterprise, but whether the defendant "exercised broad discretion in carrying out the instructions of his principal." The Second Circuit explained that "the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of §1962(c)." Id. Thus, Diaz stands for the premise that one can be liable under Section 1962(c) only if he manages or controls the affairs of an enterprise. He must do more than take mere directions. He must exercise discretion in executing his duties.

In fact, multiple Second Circuit cases have continued to emphasize the directorial/discretionary role that is required for Section 1962(c) liability. For example, in Baisch v. Gallina, 346 F.3d 366, 376 (2d Cir. 2003), the Second Circuit held, "One is liable under RICO

6

2301656

if he or she has *discretionary authority* in carrying out the instructions of the conspiracy's principals...or played some part in *directing the affairs* of the RICO enterprise." (emphasis added) (internal quotations and citations omitted).

Similarly, in <u>U.S. v. Garcia</u>, 282 Fed.Appx. 14, 26 (2d Cir. 2008), the Second Circuit upheld the Section 1962(c) conviction of a drug ring hit-man because the hit-man had "broad discretion in carrying out his role as a hit-man." (internal quotation omitted). In so holding, the Second Circuit relied upon the fact that the hit-man had previously killed multiple persons "without the direct supervision of others" and "without clearing it" with enterprise's principals. <u>Id</u>. Thus, the Second Circuit's decision emphasized the fact that the defendant had directorial/discretionary power in his work for the enterprise. He was doing more than taking mere directions.

This Court's post-<u>Reves</u> case law also emphasizes the importance of a defendant's discretionary authority in determining whether to impose Section 1962(c) liability. For example, in <u>Redtail Leasing, Inc. v. Bellezza</u>, 1999 WL 32941, *4 (S.D.N.Y. 1999), this Court explained, "There is a difference between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under <u>Reves</u> because *the test is not involvement but control*." (emphasis added) (internal citation omitted).

In <u>Dietrich v. Bauer</u>, 76 F.Supp.2d 312, 347 (S.D.N.Y. 1999), this Court again emphasized the importance of the distinction between involvement and control, holding that "liability under §1962(c) cannot be derived from a defendant's directing its own affairs; the defendant must operate or manage the enterprise's affairs... Accordingly, RICO liability may not be imposed on a defendant who merely carries on its own professional activities. Rather, the defendant's activities must relate to the conduct of the enterprise's affairs, and some part in directing those affairs is required." (internal citation and quotation omitted).

In <u>In re Motel 6 Securities Litigation</u>, 161 F.Supp.2d 227, 237 (S.D.N.Y. 2001), this Court held that the defendant was not liable under Section 1962(c) because he was a "mere

7

customer," acting on his own behalf rather than that of the enterprise. The Court explained, "while §1962(c) liability is not limited to those with primary responsibility for the enterprise's affairs or a formal position in the enterprise, *some part* in directing the enterprise's affairs is required." Id. (internal citation and quotation omitted) (emphasis added).

This Court has also held that a person can play an integral role in an alleged RICO enterprise by intentionally aiding the enterprise, but escape Section 1962(c) liability if his acts do not satisfy the Reves "operation or management test." For example, in Goldfine v. Sichenzia, 118 F.Supp.2d 392, 403 (S.D.N.Y. 2000), this Court held that although certain defendants' intentionally aided a purported RICO enterprise in fraudulently obtaining real estate loans, those defendants could not face Section 1962(c) liability because they were not "leaders, managers or directors" of the alleged enterprise's affairs. The Court explained, "In addition, the mere fact that a defendant may have aided in the alleged scheme to defraud, even if that aid was intentional, does not give rise to liability under § 1962(c)." Id.

Similiarly, in Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L., 832 F.Supp. 585, 591-92 (E.D.N.Y. 1993), the Court held that although an attorney who provided legal advice to his clients that enabled them to run a RICO enterprise, the attorney could not be liable under Section 1962(c) because he did not "'lead, run, manage, or direct' any part of the enterprise. Thus, he did not participate in the 'conduct' of an enterprise and did not violate §1962(c), even though he may have intentionally assisted a scheme to defraud."

In the present action, Plaintiffs explicitly identify the RICO enterprise as the Practice. See Amended Complaint at ¶200, 217, 235, 246, 257, 268, 269, and 284. Thus, in order to successfully state a cause of action against Richard, Erika, Raina, and Baymiller pursuant to RICO Section 1962(c), Plaintiffs are required to allege that Richard, Erika, Raina, and Baymiller played "some part in directing" the Practice's affairs. See Reeves, supra at 179. Plaintiffs must allege that these Defendants did more than simply take directions or perform tasks that were "necessary or helpful" to the Practice. See Diaz, supra at 92. Put another way, Plaintiffs can

8

state a RICO Section 1962(c) cause of action against Richard, Erika, Raina, and Baymiller only if it is alleged that those defendants actually controlled the Practice's affairs – something more than mere involvement.  See Redtail Leasing, supra at *4, Dietrich, supra at 347.  Plaintiffs must also allege that Richard, Erika, Raina, and Baymiller committed the purported acts of racketeering to benefit the Practice, rather than just themselves as individuals.  See Reves, supra at 185; Motel 6, supra at 237.  Also, Plaintiffs must allege that even if Richard's, Erika's, Raina's, and Baymiller's purportedly fraudulent actions were intentional, that they took those actions in their capacity as leaders, managers, and/or directors of the alleged enterprise. See Goldfine, supra at 403; Biofeedtrac, supra at 591-92.

Plaintiffs fail to meet this pleading burden as to Richard, Erika, Raina, and Baymiller. None of the allegations in Plaintiffs' Amended Complaint satisfies the "operation or management test" established by Reves and its progeny because at no point do Plaintiffs allege that Richard, Erika, Raina, and Baymiller had any authority or ability to manage the Practice's affairs.  In fact, Plaintiffs allege that Richard, Erika, Raina, and Baymiller were never even employed by the Practice.  See Amended Complaint at ¶112 (Richard), ¶118 (Erika), ¶122 (Raina), and ¶129 (Baymiller).  Plaintiffs also allege that all discretion in the purported enterprise, the Practice, was left solely to Dr. Hamner.  Plaintiffs claim that Dr. Hamner decided what insurance claims to submit and what CPT codes to use for each insurance claim (Id. at ¶66-81), waived co-insurance and deductibles from the Health Plan's members (Id. at ¶82-86), and acted as the Plan administrator with a fiduciary duty to accurately represent the fact about the Plan's enrollment (Id. at ¶92-101).  Furthermore, Plaintiffs allege that Richard, Erika, Raina, and Baymiller committed the purported acts of racketeering for their own benefit, to procure insurance coverage they would have not otherwise received.  Id. at ¶113, 119, 123, 130, 284, and 286.  Such allegations are inconsistent with the pleading burden that one must conduct the enterprise's affairs, not one's own affairs.  See Reves, supra at 185; Motel 6, supra at 237.

2301656

Although Plaintiffs allege that Richard, Erika, Raina, and Baymiller "authorized" Dr. Hamner to use the Practice to commit acts of racketeering (Id. at ¶234-280), those allegations are belied by the general tenor of the Amended Complaint, which asserts that Dr. Hamner was the one in charge of the alleged enterprise, the Practice.   Furthermore, as discussed in the preceding paragraph, Plaintiffs allege that Dr. Hamner was the defendant with the discretion to actually control the Practice.

Additionally, while Plaintiffs may claim that Richard, Erika, Raina and Baymiller acted in a manner that was integral to the Practice's alleged scheme, Plaintiffs have failed to allege how Richard's, Erika's, Raina's, and Baymiller's acts constituted the acts of leaders, managers, or directors of the Practice's affairs. See Goldfine, supra at 403; Biofeedtrac, supra at 591-92. In that sense, this case can is similar to Soanes v. Empire Blue Cross/Blue Shield, 970 F.Supp. 230 (S.D.N.Y. 1997). In Soanes, defendants Sprei, Lieber, and their corporate entities operated an insurance fraud enterprise "over a significant period of time by approaching and procuring contracts from numerous insurance companies, soliciting various unions for inclusion in the scheme, recruiting associated members from the general public and administering the insurance contracts." Id. at 240.   Defendant Soanes, a president of one such labor union, procured insurance coverage for his union from Empire Blue Cross/Blue Shield by failing to advise Empire that the coverage was for associated members, not regular members. Id. at 237. Soanes' procurement of the Empire contract allowed Sprei and Lieber to further the enterprise's scheme by allowing them to fraudulently enroll numerous persons from the general public who would not otherwise have qualified for the coverage that Soanes had negotiated for his union. Id. at 240.  Subsequent to that, Sprei and Lieber, without any further assistance from Soanes, continued to fraudulently enroll associated union members in additional insurance policies that they fraudulently procured from other insurance companies. Id.  The Court held that Soanes was not subject to Section 1962(c) liability because although his acts "might have contributed to the success of the RICO enterprise, he simply did not come within the circle of people who

10

operated or managed the enterprise's affairs." Id. at 241 (citing United States v. Viola, 35 F.3d 37, 43 (2d Cir.1994)). The Court explained, "Soanes' participation was limited to independently negotiating and procuring contract 82079 from Empire... There is no proof whatsoever that Soanes participated or managed the RICO enterprise... At best, the evidence establishes that Soanes was deliberately and recklessly indifferent to whether the fraud in which he participated was part of a larger fraud." Id. at 240. The Court concluded that "while Soanes may arguably have aided and abetted the fraudulent activities of the RICO enterprise, that conduct is insufficient to sustain a RICO claim against him." Id. at 241.

In the present matter, Richard, Erika, Raina, and Baymiller are in the same position as Soanes. They are accused of fraudulently enrolling in an insurance program for which they were not otherwise qualified, as part of a larger purported fraudulent enterprise allegedly operated by Dr. Hamner. See Amended Complaint at ¶113, 119, 123, 130, 284, and 286. However, they are not accused of having operated or managed the purported enterprise with Dr. Hamner. At best, Plaintiffs have asserted nothing more than an allegation that Richard, Erika, Raina, and Baymiller were "indifferent to whether the [alleged] fraud in which [they allegedly] participated was part of a larger fraud." Soanes, supra at 240. This is insufficient to state a valid cause of action Section 1962(c) liability.

Like Soanes, the present action stands in marked contrast to Tribune Co. v. Purcigliotti, 869 F.Supp. 1076 (S.D.N.Y. 1994), which concerned an alleged RICO enterprise of a physician, law firm, labor union, and union members, whose collective goal was to submit false hearing loss claims to Worker's Compensation. The physician's alleged role in the enterprise was "performing the audiograms, taking no steps to ensure accuracy, falsely certifying the audiograms, and directing a copy of his conclusions to [the law firm] for transmission to the [Worker's Compensation] Board." Id. at 1097. The labor union was accused of having "'participated in the development and implementation of the fraudulent scheme,' and 'coordinated the scheme' by contacting their members, informing them of the concerted action

2301656

and directed them to take certain actions to carry out the scheme." Id. at 1099. The union members were alleged to have participated in the enterprise "by fraudulently responding to the audiological examinations and filing fraudulent hearing loss claims with the Board." Id. at 1098. They were also alleged to have had "discussions between and among themselves which led them to [the law firm] for filing these claims." Id. And finally, the law firm was accused of having a key role in the "conception, creation [and] execution" of the fraudulent scheme, and also of advising the union members to falsify responses to the audiograms. Id. at 1099. The Court concluded that the plaintiffs sufficiently stated a Section 1962(c) cause of action against each defendant because the plaintiffs sufficiently alleged how each defendant played a key role in coordinating and implementing the purported enterprise's affairs. Id. at 1097-1099.

The present action is distinguishable from Tribune Co. because here, Plaintiffs have failed to allege how Richard, Erika, Raina, and Baymiller *each* coordinated and implemented the alleged enterprise's affairs. At best, Plaintiffs have alleged only that Richard, Erika, Raina, and Baymiller acted in a manner integral to the alleged enterprise, but a manner that cannot be construed, even in a light most favorable to Plaintiffs, as discretionary or directorial control or authority over the Practice consistent with Reves' "operation or management test." See Goldfine, supra at 403; Biofeedtrac, supra at 591-92. Thus, Plaintiffs fail to state a cause of action against Richard, Erika, Raina, and Baymiller pursuant to Section 1962(c), and the Court should dismiss Plaintiffs' Eighth, Ninth, Tenth, and Eleventh purported causes of action in their entirety with prejudice.

## POINT II

### PLAINTIFF FAILS TO STATE A CAUSE OF ACTION AGAINST THE MOVING DEFENDANTS PURSUANT TO RICO SECTION 1962(d) – RICO CONSPIRACY

Plaintiffs' Twelfth Purported Cause of Action, asserted against all of the Defendants, alleges a RICO conspiracy pursuant to RICO Section 1962(d). Section 1962(d) states, "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or

2301656

(c) of this section." See 18 U.S.C. §1962(d).   While Section 1962(c) proscribes "*individual*

patterns of racketeering engaged in by a defendant," Section 1962(d) proscribes "the *collective*

activities of the members of the enterprise."   See U.S. v. Persico, 832 F.2d 705, 714 (2d Cir.

1987) (emphasis added).

Thus, in order to state a cause of action for a RICO conspiracy pursuant to Section

1962(d), a plaintiff must allege that all of the defendants "agreed to participate in the affairs of

the enterprise through a pattern of racketeering activity."   See U.S. v. Yannotti, 541 F.3d 112,

121 (2d Cir. 2008).   See also Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d

229, 244 (2d Cir. 1999) ("To establish the existence of a RICO conspiracy, a plaintiff must prove

"the existence of an agreement to violate RICO's substantive provisions.") (internal quotation

omitted).   As the United States Supreme Court has explained, "[t]he partners in the criminal plan

must agree to pursue the same criminal objective."   See Salinas v. U.S., 522 U.S. 52 (1997);

Yannotti, supra at 122.   Put another way, a plaintiff must allege that each defendant "kn[e]w of,

and agree[ed] to, the general criminal objective of a jointly undertaken scheme."   Yannotti, supra

at 122.   See also Allstate Ins. Co. v. Etienne, 2010 WL 4338333 (E.D.N.Y. 2010) ("Under the

standard elucidated in Yannotti, Allstate has sufficiently alleged a conspiracy amongst the

defendants.   Allstate alleged both that the defendants each agreed to participate in the

respective schemes, and that they had knowledge of each co-conspirator's role in the predicate

acts of mail fraud... Allstate also alleged that each group of defendants benefitted from each

other's participation in the scheme."); Allstate Ins. Co. v. Rozenberg, 590 F.Supp.2d 384, 394

(E.D.N.Y. 2008) (a RICO conspiracy cause of action was adequately stated because "the

Plaintiffs have set forth, in considerable detail, an agreement between the various Defendants to

violate §1962(c).").

In the present action, Plaintiffs fail to state a RICO conspiracy claim against any of the

Defendants pursuant to Section 1962(d) because Plaintiffs do not adequately allege anywhere

in the Amended Complaint that there was a common, collective goal amongst the Defendants.

2301656

Plaintiffs offer no more than a conclusory assertion that the Defendants "individually and collectively" agreed to allow Dr. Hamner to submit false insurance claims.   See Amended Complaint at ¶288, 290-292, 295-297.  The assertion is conclusory because Plaintiffs offer no factual allegations in support of it.  Id.  Furthermore, by use of the phrase "individually and collectively," Plaintiffs adopt the logical fallacy that because each individual person *rnay* have been individually or separately aware of what Dr. Hamner was doing, there must have somehow been a group agreement.  Id.  At best, Plaintiffs have merely alleged only that the Defendants *separately and individually* knew that Dr. Hamner was submitting false insurance claims through the purportedly fraudulently obtained Health Plan.  Plaintiffs' conclusory assertion that multiple defendants may have *separately and individually* known the same thing is not the same as an allegation that all of the Defendants *collectively agreed* to fraudulently enroll in the Health Plan in order to allow Dr. Hamner to submit false insurance claims, and that all Defendants were jointly aware that each individual defendant understood that to be the purpose of the scheme. In fact, at oral argument of Defendants motion to dismiss Plaintiffs' original Complaint, the Court faulted Plaintiffs for doing just the same thing in the original Complaint, noting that Plaintiffs alleged only individual, not collective, knowledge.  Accordingly, dismissal is warranted because Plaintiffs fail to address this pleading deficiency in their Amended Complaint.

Furthermore, although Plaintiffs emphasize in their Amended Complaint that the Defendants were all close friends and family members, (Amended Complaint at ¶283), that allegation in and of itself does not establish the collective agreement or understanding required to sufficiently allege the existence of a conspiracy.  In fact, this Court rejected the "close friends and family" argument for just that reason when Plaintiffs raised it during oral argument of Defendants' motions to dismiss Plaintiffs' original Complaint.

Plaintiffs have still not sufficiently alleged a RICO conspiracy.  The essence of a conspiracy is that multiple people are aware of a common goal.  See U.S. v. Maldonado-Rivera, 922 F.2d 934 (2d Cir. 1990) ("The essence of any conspiracy is, of course, agreement, and in

14

order to prove a single conspiracy, the [plaintiff] must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal."); U.S. v. Eppolito, 543 F.3d 25 (2d Cir. 2008) (same).   In the present matter, Plaintiffs simply have not made that allegation.   Accordingly, Plaintiffs' RICO conspiracy claim pursuant to Section 1962(d), the Twelfth purported cause of action, must be dismissed in its entirety.

Plaintiffs also fail to state a RICO conspiracy claim pursuant to Section 1962(d) because, as discussed above in "Point I," Plaintiffs have failed to state a valid Section 1962(c) claim against Richard, Erika, Raina, and Baymiller.   As Your Honor has previously held, "if a substantive RICO claim fails, then the RICO conspiracy claim must fail as well."   Medinol Ltd. v. Boston Scientific Corp., 346 F.Supp.2d 575, 616 (S.D.N.Y. 2004).   When the substantive RICO claims are dismissed against all but one defendant, the RICO conspiracy claim must fail as well because an allegation of conspiracy can only be sustained if the conspiracy consists of at least two people.   See Panix Promotions, Ltd. v. Lewis, 2002 WL 72932, *8 (S.D.N.Y. 2002) (Dismissing Section 1962(d) RICO conspiracy claim because the Court dismissed the substantive RICO claims against all but one defendant, and "conspiracy allegations must fail since an agreement between two or more persons is a prerequisite to a conspiracy claim."); Rogers v. U.S., 340 U.S. 367, 375 (1951) ("[A]t least two persons are required to constitute a conspiracy."); U.S. v. Green, 421 F.2d 1237, 1238 (2d Cir. 1970) (citing Rogers v. U.S.).

## POINT III

### THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS AGAINST RICHARD, ERIKA, RAINA, AND BAYMILLER

Plaintiffs assert a claim under New York State law against all of the Defendants for fraudulent enrollment in the Health Plan. See Amended Complaint at ¶189-197 (Fifth purported cause of action).   The Court should decline to exercise supplemental jurisdiction over this claim with respect to Richard, Erika, Raina, and Baymiller because Plaintiffs have no viable claim under Federal law against these defendants, as Plaintiffs fail to state a cause of action against

2301656

them under RICO.   <u>See</u> Points I and II; 28 U.S.C. §1367; <u>In re Merrill Lynch</u>, <u>supra</u> at 61 (declining to exercise supplemental jurisdiction over state law claims after dismissal of RICO claim); <u>Fisk v. Letterman</u>, 501 F.Supp.2d 505, 528 (S.D.N.Y. 2007) ("When all federal claims are dismissed, district courts should generally decline to exercise supplemental jurisdiction over pendent state law claims.").

<u>CONCLUSION</u>

WHEREFORE, it is respectfully requested that on the facts, the law and for all the reasons set forth herein, that this Court enter an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing Plaintiffs': (1) Eighth, Ninth, Tenth, Eleventh, and Twelfth purported causes in their entirety, with prejudice; and (2) Plaintiffs' Fifth purported cause of action against Richard, Erika, Raina, and Baymiller in their entirety with prejudice, along with such other and further relief as this Court deems just and proper.

Dated: New York, New York
          September 4, 2013

KAUFMAN BORGEEST & RYAN LLP

Jonathan B. Bruno
Stephanie B. Gitnik
Alex N. Niederman
*Attorneys for Defendants*
*Daniel Hamner, M.D., Daniel Hamner*
*Physician, P.C., Daniel Hamner, M.D., P.C.,*
*Richard Hamner, Erika Macbride,*
*Raina Hamner, and Rae Baymiller*
120 Broadway, 14th Floor
New York, New York 10271
(212) 980-9600
KBR File No.: 862.216

16

2301656