| | |
|---|---|
| **From:** | Richard Pu |
| **To:** | Seybert, John |
| **Subject:** | RE: Christopher Counterclaim |
| **Date:** | Friday, August 23, 2013 11:20:53 PM |
| **Attachments:** | image001.png |
| | Pro2p1.pdf |
| | Pro1n10.pdf |

I'm resending the two cases under NY Public Health Law § 18 as pdfs, and have marked the relevant passages.  You allege in the body of the complaint that Anne Christopher received acupuncture from Hamner.  In addition, in the attachment you list the names of numerous physicians besides Hamner who provided her with service, the dates of their service, and the amounts charged and paid for their services.

If we stay in as defendants you can count on a counterclaim under  NYS Public Health § 18. That will also certainly cause Bruno to follow suit.

As for service, I've asked my client whether I should accept service.

**From:** Seybert, John [mailto:John.Seybert@sedgwicklaw.com]
**Sent:** Friday, August 23, 2013 9:02 PM
**To:** Richard Pu
**Cc:** 'Jonathan B. Bruno'; Alex Niederman (aniederman@kbrlaw.com); Bernstein, Michael; Kim, Julie
**Subject:** Oxford v. Hamner

Mr. Pu,

Attached is a revised Case Management Plan including all of your revisions.  Although we think that the discovery of the fraud causes of action and the RICO violations overlap such that there will not be much, if any, discovery that would be stayed by the Court's Order, we are willing to extend discovery out an additional two months subject to the Court's approval.  Also, please note that we increased the number of anticipated deponents because some of the other patients/employees of Hamner, P.C. may need to be deposed.

I also want to respond to your anticipated counterclaim and your email from the other day regarding alleged violations of HIPAA based on the purported improper disclosure of protected health information ("PHI") of Anne Christopher.  Initially, you sent me an email with some attachments that cannot be opened.  I am not sure what you intended to attach in that email. Nevertheless, we have not violated HIPAA.  In this case, we have alleged facts in a Complaint establishing Ms. Christopher's fraudulent misrepresentations and predicate acts under RICO.  The restrictions against disclosure of PHI do not apply in a situation involving these circumstances. Indeed, it would be truly ironic that your client could avoid liability for fraudulent misrepresentations by refusing to allow disclosure of medical treatment records.  Moreover, it is worth noting that many of the services listed are actually fraudulent; i.e., they were not actually rendered.  We circulated the proposed protective order to keep disclosure of any PHI to the minimum amount necessary.  We will accept your addition to the proposed protective order and bring that to Court for the conference, as well.

With respect to the draft protective order, I needed to change paragraph 7 to conform to Judge

Hellerstein's rules.  Judge Hellerstein's rule 4 requires that a simultaneous motion to seal.

Finally, you have not returned the waiver of service for the Amended Summons to your client.  Please let me know if you will be returning the waiver.

Very truly yours,
John


**John T. Seybert**
John.Seybert@sedgwicklaw.com |  +1-212-898-4028

225 Liberty Street, 28th Floor
New York, NY 10281-1008
+1-212-422-0202 *phone* | +1-212-422-0925 *fax* | www.sedgwicklaw.com

------------------------------
The information in this email is intended for the named recipients only.  It may contain privileged and confidential matter.  If you have received this email in error, please notify the sender immediately by replying to this email.  Do not disclose the contents to anyone.  Thank you.

IRS Circular 230 Disclosure:  To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
------------------------------

**Westlaw Delivery Summary Report for PU,RICHARD**

Date/Time of Request:                     Friday, August 23, 2013 12:11 Eastern

Client Identifier:                        CHRISTOPHER

Database:                                 DCT

Citation Text:                            Not Reported in F.Supp.2d

Lines:                                    142

Documents:                                1

Images:                                   0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.



Not Reported in F.Supp.2d, 2003 WL 1745064 (S.D.N.Y.)

(Cite as: 2003 WL 1745064 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Enrique CARAVEO, Plaintiff,
v.
NIELSEN MEDIA RESEARCH, INC., et al.
Defendants.
No. 01CIV9609(LBS)(RLE).

March 31, 2003.
MEMORANDUM & ORDER

SAND, J.
BACKGROUND
   **\*1** *Pro se* plaintiff Enrique Caraveo's Second
Amended Complaint in this suit alleges 30 causes of
action against 25 government, corporate, and individual
defendants. On May 22, 2002, defendants Nielsen Media
Research, Inc., VNU, ACNielsen Corporation, Gabriel
Oviedo, Fred Rogers, Bob Burns and Manuel Crujeiras
(collectively, "Nielsen Defendants") filed a motion to
dismiss 22 of the 24 counts alleged against them. On June
6, 2002, defendants United States Equal Employment
Opportunity Commission ("EEOC"), Michele Megerle,
Guillermo Zamora, Pedro Esquivel, Ida L. Castro, Cari M.
Dominguez, and Jacqueline R. Bradley (collectively,
"Federal Defendants") filed a motion to dismiss Caraveo's
six claims against the Federal Defendants.
   On January 22, 2003, Magistrate Judge Ronald L.
Ellis issued a Report and Recommendation ("First
Report") recommending dismissal of 21 of the 24 counts
against the Nielsen Defendants and dismissal of the six
counts against the Federal Defendants. *Caraveo v. Nielsen
Media Research, Inc.,* 2003 U.S. Dist. LEXIS 941
(S.D.N.Y. Jan. 22, 2003). With respect to Count 18, which
alleges a violation of the confidentiality provision in New
York Public Health Law § 18(6), the First Report
recommended that the motion to dismiss should be denied.
On the same day, Magistrate Judge Ellis issued another
Report and Recommendation ("Second Report")

recommending that Plaintiff's motion for default against
defendant Unival should be denied. *Caraveo v. Nielsen
Media Research, Inc.,* 2003 U.S. Dist. LEXIS 945
(S.D.N.Y. Jan. 22, 2003). Plaintiff objected to the
recommended dismissal of all counts except Counts 13
and 20 and to the recommended denial of his motion for
default judgment.

   After both Reports were issued, on February 10,
2003, counsel for defendants Metropolitan Life Insurance
Company, Gail Henegan, and David Schueller
(collectively, "MetLife Defendants") advised the Court by
letter that the Plaintiff may have sought short-term
disability benefits under a non-ERISA Salary
Continuation Plan. This information was not before
Magistrate Judge Ellis at the time he issued the First
Report.

DISCUSSION

   Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule
of Civil Procedure 72(b), a district court reviewing a
magistrate's report and recommendation may adopt those
parts of the report to which no objection is raised. *Thomas
v. Arn,* 474 U.S. 140, 149 (1985). When a party objects to
a report's recommendations, a district court "shall make a
de novo determination of those portions of the report or
specified proposed finding or recommendations to which
objection is made." 28 U.S.C. § 636(b)(1).
   The Court adopts the First Report's recommendations
as to the following counts: Counts 3–6, 12–16, and 20–30.
These counts against the Nielsen Defendants and the
Federal Defendants are hereby dismissed. The Court also
adopts the recommended denial of the motion to dismiss
with respect to Count 18. The Court adopts the Second
Report's recommended denial of Plaintiff's motion for
default judgment against Unival.

   **\*2** The Court rejects the First Report's
recommendations regarding the dismissal of Counts 17
and 19. Count 17 alleges a violation of the Texas Medical
Practice Act, Article 4495b of the Texas Civil Statutes,
but does not cite a specific section of that article.
(Pl.Compl.¶ 232.) As the parties later discovered, Article

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 1745064 (S.D.N.Y.)

(Cite as: 2003 WL 1745064 (S.D.N.Y.))

4495b was repealed in 1999 and recodified in the Texas Occupational Code. Tex. Occ.Code Ann. §§ 151.001 et seq. Count 19 alleges a violation of the Americans with Disabilities Act's (ADA) confidentiality provision, 42 U.S.C. § 121112, but does not cite a specific subsection. (Pl.Compl.¶ 232.) In subsequent responses to the Nielsen Defendants' motion to dismiss these counts, Plaintiff cited Texas Occupational Code § 151.002(a)(13) and 42 U.S.C. § 12112(d)(3). However, as neither of these specific statutory provisions provide a basis for relief, the Report recommended that both counts should be dismissed. *Caraveo,* 2003 U.S. Dist. LEXIS 941 at \*21–23.

In relying on the specific statutory sections later identified by Plaintiff, the Report failed to account for other sections of former Article 4495b and subsections of § 12112–fairly encompassed in the language of the complaint–that provide a basis for Plaintiff's claims. *See Weixel v. Bd. of Educ.,* 287 F.3d 138, 145–46 (2d Cir.2002) ("When considering motions to dismiss a pro se complaint such as this, courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.") (internal quotation marks omitted). By citing Article 4495b in its entirety, Count 17 incorporates the confidentiality provisions in Texas Occupational Code §§ 159.002 and 159.009 (formerly Art. 4495b § 5.08). These sections generally prohibit the disclosure of confidential medical information to third parties–the gravamen of Plaintiff's allegation. *Cassingham v. Lutheran Sunburst Health Serv.,* 748 S.W.2d 589 (Tex.App.1988) ("[Former] [s]ection 5.08(c) provides that *any* person, not just a physician, shall keep the patient's confidence. The physician may make and maintain the records, but the prohibition against unauthorized disclosure goes to anyone obtaining the information.") (emphasis in original). Similarly, the reference in Count 19 to 42 U .S.C. § 12112 encompasses § 12112(d)(4), which fits the conduct alleged by Plaintiff. *See* 42 U.S.C. § 12112(d)(4)(C) (applying the confidentiality provisions of § 12112(d)(3) to cover information obtained pursuant to voluntary medical examinations and employer inquiries). At this stage of the litigation, *pro se* Plaintiff's citations to specific statutory provisions in his memoranda of law do not supersede the plain language of the complaint. And, as the Report acknowledges in its discussion of Count 18, the complaint adequately alleges that the Nielsen Defendants released confidential information to third parties. It is not therefore appropriate to dismiss Counts 17 and 19 at this time.

**\*3** The Court remands the case to Magistrate Judge Ellis for reconsideration of Counts 7–11. The First Report recommends dismissal of these claims on the grounds that they are preempted by ERISA. *Caraveo,* 2003 U.S. Dist. LEXIS 941 at \*13–16. It now appears from the February 10, 2003 letter, however, that Plaintiff may have applied for benefits under Nielsen's non-ERISA Salary Continuation Plan. The letter raises the possibility that Plaintiff applied for benefits pursuant to a "payroll practice" rather than an ERISA employee welfare benefit plan. If so classified, the Salary Continuation Plan is exempt from ERISA. 29 C.F.R. § 2510.3–1(b) (stating that "employee benefit plans" do not include certain "payroll practices" and defining payroll practices to include "payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons[.]"); ERISA Op. Letter No. 83–37A (1983) (stating that an uninsured salary continuance plan funded from the employer's general assets is a payroll practice as described in § 2510.3–1(b)(2)). And if the Salary Continuation Plan is exempt from ERISA as a payroll practice, ERISA's preemption provision does not apply to Plaintiff's claims insofar as they relate to the Salary Continuation Plan. 29 U.S.C. § 1144(a); *Funkhouser v. Wells Fargo Bank, N.A.,* 289 F.3d 1137, 1142–43 (9th Cir.2002); *Gilbert v. Burlington Indus.,* 765 F.2d 320, 324 (2d Cir.1985). In light of the possibility that Plaintiff's claims relate to a payroll practice rather than an employee benefit plan, then dismissing Counts 7–11 on the grounds that they are preempted by ERISA is premature.

CONCLUSION

For the foregoing reasons, the Nielsen Defendants' motion to dismiss is granted in part and denied in part. The Federal Defendants' motion to dismiss is granted. Plaintiff's motion for default judgment against Unival is denied. The Court remands this case to Magistrate Judge Ellis for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 1745064 (S.D.N.Y.)

(Cite as: 2003 WL 1745064 (S.D.N.Y.))

S.D.N.Y.,2003.

Caraveo v. Nielsen Media Research, Inc.-
Not Reported in F.Supp.2d, 2003 WL 1745064 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for PU,RICHARD**

| | |
|---|---|
| Date/Time of Request: | Friday, August 23, 2013 11:56 Eastern |
| Client Identifier: | CHRISTOPHER |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Locate Text: | insurer |
| Lines: | 931 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.



Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

⚑

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Enrique CARAVEO, Plaintiff,
v.
NIELSEN MEDIA RESEARCH, INC., et al.,
Defendants.
No. 01Civ.9609 LBSRLE.

Jan. 22, 2003.

Employee brought action against employer, **insurer**, and other defendants alleging violation of Employee Retirement Income Security Act (ERISA), Americans with Disabilities Act (ADA), and other causes of action. On defendants' motions to dismiss, the District Court, Ellis, United States Magistrate Judge, recommended that: (1) employee's allegations were not sufficient to meet the standards of pleading civil conspiracy under New York or Texas law; (2) employer could not be considered a de facto administrator of employee's short term disability plan; (3) employer was not a fiduciary under ERISA; (4) employee stated claim that employer violated New York medical record privacy law; (5) implied employment contract did not arise between employer and employee through promissory estoppel; and (6) court did not have personal jurisdiction over employees of Equal Employment Opportunity Commission (EEOC).

Motion granted in part and denied in part.

West Headnotes

**[1] Torts 379 🔑214**

379 Torts

379III Tortious Interference
379III(B) Business or Contractual Relations
379III(B)1 In General
379k214 k. Existence of valid or identifiable

contract, relationship or expectancy. Most Cited Cases
(Formerly 379k12)
Under both New York and Texas law, a claim of tortious interference with a contract requires proof of the existence of a valid contract between a plaintiff and a third party..

**[2] Conspiracy 91 🔑18**

91 Conspiracy

91I Civil Liability
91I(B) Actions
91k18 k. Pleading. Most Cited Cases
Employee's allegations were not sufficient to meet the standards of pleading civil conspiracy under New York or Texas law, since employee failed to allege a meeting of the minds and any overt acts between employer and **insurer**.

**[3] Conspiracy 91 🔑1.1**

91 Conspiracy

91I Civil Liability
91I(A) Acts Constituting Conspiracy and Liability Therefor
91k1 Nature and Elements in General
91k1.1 k. In general. Most Cited Cases
The civil rights conspiracy statute cannot be used to enforce statutes which already provide a mechanism for relief. 42 U.S.C.A. § 1985(3).

**[4] Labor and Employment 231H 🔑407**

231H Labor and Employment

231HVII Pension and Benefit Plans
231HVII(A) In General
231Hk407 k. Preemption. Most Cited Cases
(Formerly 296k22)
**States 360 🔑18.51**

360 States

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

360I Political Status and Relations
    360I(B) Federal Supremacy; Preemption
        360k18.45 Labor and Employment
            360k18.51 k. Pensions and benefits. Most Cited Cases
    ERISA preempts a state common law action which merely amounts to an alternative theory of recovery. Employee Retirement Income Security Act of 1974, § 514, 29 U.S.C.A. § 1144. .

**[5] Labor and Employment 231H ⟶797**

231H Labor and Employment

    231HVIII Adverse Employment Action
        231HVIII(A) In General
            231Hk793 Pensions and Benefits
                231Hk797 k. Motive and intent; pretext. Most Cited Cases
    (Formerly 255k30(1.20) Master and Servant)
    No cause of action lies under ERISA where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

**[6] Labor and Employment 231H ⟶462**

231H Labor and Employment

    231HVII Pension and Benefit Plans
        231HVII(C) Fiduciaries and Trustees
            231Hk460 Who Are Fiduciaries
                231Hk462 k. Employers. Most Cited Cases
    (Formerly 296k44)
    Employer could not be considered a de facto administrator of employee's short term disability plan, in context of employee's claim under ERISA that he was denied documents upon request, since employee demonstrated that he knew that **insurer** was the plan administrator by contacting **insurer** with respect to his short term disability benefits. Employee Retirement Income Security Act of 1974, § 502, 29 U.S.C.A. § 1132.

**[7] Labor and Employment 231H ⟶462**

231H Labor and Employment

    231HVII Pension and Benefit Plans
        231HVII(C) Fiduciaries and Trustees
            231Hk460 Who Are Fiduciaries
                231Hk462 k. Employers. Most Cited Cases
    (Formerly 296k44)
    Employer was not a fiduciary under ERISA in context of employee's short term disability plan, since **insurer**, as plan administrator, and not employer, had discretionary authority and control over denial of employee's benefits. Employee Retirement Income Security Act of 1974, § 404, 29 U.S.C.A. § 1104(a)(1)(A)(i).

**[8] Torts 379 ⟶330**

379 Torts

    379IV Privacy and Publicity
        379IV(B) Privacy
            379IV(B)1 Privacy in General
                379k330 k. In general. Most Cited Cases
    (Formerly 379k8.5(6), 379k8.5(2))
**Torts 379 ⟶383**

379 Torts

    379IV Privacy and Publicity
        379IV(C) Use of Name, Voice or Likeness; Right to Publicity
            379k383 k. In general. Most Cited Cases
    (Formerly 379k8.5(6), 379k8.5(2))
    In New York, there is no common law right to privacy, and the statutory protection for right of privacy is limited only to the extent of affording a remedy for commercial exploitation of an individual's name, portrait or picture, without written consent. McKinney's Civil Rights Law §§ 50, 51.

**[9] Health 198H ⟶192**

198H Health

    198HI Regulation in General
        198HI(B) Professionals
            198Hk191 Regulation of Professional Conduct; Boards and Officers

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

198Hk192 k. In general. Most Cited Cases
(Formerly 13k3)
   Texas Medical Practice Act does not provide a private cause of action. V.T.C.A., Occupations Code § 151.002(a)(13).

**[10] Insurance 217 ⟜1591**

217 Insurance

   217X Privacy of Information
      217k1590 Disclosure by **Insurer**
      217k1591 k. In general. Most Cited Cases
**Labor and Employment 231H ⟜858**

231H Labor and Employment

   231HVIII Adverse Employment Action
      231HVIII(B) Actions
         231Hk858 k. Pleading. Most Cited Cases
   (Formerly 255k39(1) Master and Servant)
   Employee's allegations, that employer and **insurer** "disclosed intimate details about plaintiff's medical condition to third parties" and that "[p]laintiff did not authorize disclosure of private facts to third parties," was sufficient to state claim that employer and **insurer** violated New York law mandating that whenever patient information was to be released to a party other than the patient, written consent was required to be obtained in advance before such disclosure could occur. McKinney's Public Health Law § 18(6).

**[11] Civil Rights 78 ⟜1229**

78 Civil Rights

   78II Employment Practices
      78k1215 Discrimination by Reason of Handicap, Disability, or Illness
         78k1229 k. Confidentiality; disclosure. Most Cited Cases
   (Formerly 78k173.1)
   Confidentiality provision in the ADA, which prohibited employers from conducting medical examinations and inquiries related to employment and hiring in certain situations, was reserved for information obtained as result of lawful employer mandated physical examinations. Americans with Disabilities Act of 1990, § 102, 42 U.S.C.A. § 12112.

**[12] Action 13 ⟜3**

13 Action

   13I Grounds and Conditions Precedent
      13k3 k. Statutory rights of action. Most Cited Cases
   In New York, the provision governing penalties for professional misconduct does not provide a private cause of action. McKinney's Education Law §§ 6511, 6521.

**[13] Labor and Employment 231H ⟜914**

231H Labor and Employment

   231HIX Interference with the Employment Relationship
      231Hk912 Procurement of Discharge
         231Hk914 k. Persons liable. Most Cited Cases
   (Formerly 255k341 Master and Servant)
   In order to show that a defendant-employee is a third party, for purposes of a claim of tortious interference with an employment contract, a plaintiff must show that the employee exceeded the bounds of his authority.

**[14] Estoppel 156 ⟜85**

156 Estoppel

   156III Equitable Estoppel
      156III(B) Grounds of Estoppel
         156k82 Representations
            156k85 k. Future events; promissory estoppel. Most Cited Cases
   Implied employment contract did not arise between employer and at-will employee through promissory estoppel, even though employer provided short term disability plan to its employees, since employee's claim for benefits was rejected before his termination.

**[15] Civil Rights 78 ⟜1044**

78 Civil Rights

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

78I Rights Protected and Discrimination Prohibited in General
　　78k1043 Public Accommodations
　　　78k1044 k. In general. Most Cited Cases
**Civil Rights 78 ☞1217**

78 Civil Rights

　　78II Employment Practices
　　　78k1215 Discrimination by Reason of Handicap, Disability, or Illness
　　　　78k1217 k. Practices prohibited or required in general; elements. Most Cited Cases
　　Title III of the ADA does not regulate the terms and conditions of a long-term disability insurance plan offered by an employer to its employee through an insurance company. Americans with Disabilities Act of 1990, § 301 et seq., 42 U.S.C.A. §§ 12181et seq.

**[16] Workers' Compensation 413 ☞2093**

413 Workers' Compensation

　　413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
　　　413XX(A) Between Employer and Employee
　　　　413XX(A)1 Exclusiveness of Remedies Afforded by Acts
　　　　　413k2093 k. Willful or deliberate act or negligence. Most Cited Cases
　　Employee's allegations of negligent infliction of emotional distress against employer were not cognizable, since New York worker's compensation law provided exclusive remedy for injuries resulting from negligence in the workplace. McKinney's Workers' Compensation Law §§ 10, 11, 29.

**[17] Damages 115 ☞57.58**

115 Damages

　　115III Grounds and Subjects of Compensatory Damages
　　　115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
　　　　115III(A)2 Mental Suffering and Emotional Distress

　　　　　115k57.50 Labor and Employment
　　　　　　115k57.58 k. Other particular cases. Most Cited Cases
　　(Formerly 115k50.10)
　　Employee's allegations made in support of his intentional infliction of emotional distress claim, that employer "conspired to produce fraudulent reports in order to interfere with plaintiff's rights, to emotionally and economically retaliate against him, and to deprive him of his constitutional rights," were not sufficient to state extreme and outrageous conduct.

**[18] Federal Courts 170B ☞76.5**

170B Federal Courts

　　170BII Venue
　　　170BII(A) In General
　　　　170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
　　　　　170Bk76.5 k. Contacts with forum state. Most Cited Cases
　　Federal district court did not have personal jurisdiction over employees of Equal Employment Opportunity Commission (EEOC), since they did not live or work in New York, they did not own, use, or possess property in New York, and they did not transact or solicit business in New York, and even though EEOC employees spoke with plaintiff over the telephone, any telephone contact that they had with New York plaintiff in investigating his claims did not rise to the level sufficient to establish personal jurisdiction in New York. McKinney's CPLR § 302(a).

**[19] Constitutional Law 92 ☞4178**

92 Constitutional Law

　　92XXVII Due Process
　　　92XXVII(G) Particular Issues and Applications
　　　　92XXVII(G)7 Labor, Employment, and Public Officials
　　　　　92k4176 Regulation of Employment
　　　　　　92k4178 k. Employment discrimination laws. Most Cited Cases
　　(Formerly 92k275(2.1))
　　No cause of action exists against the Equal

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

Employment Opportunity Commission (EEOC) under the due process clause for challenges to its processing of a claim. U.S.C.A. Const.Amend. 5.

**[20] United States 393 ⊙⟿50.10(2)**

393 United States

    393I Government in General
        393k50 Liabilities of Officers or Agents for Negligence or Misconduct
        393k50.10 Particular Acts or Claims
        393k50.10(2) k. Attorneys and investigators, acts of. Most Cited Cases

    Even an arbitrary and capricious denial of the investigative and conciliatory benefits the Equal Employment Opportunity Commission (EEOC) can provide to a charging party does not transgress the due process clause in a way that would support the implication of a *Bivens*-type damage remedy. U.S.C.A. Const.Amend. 5.

**[21] Civil Rights 78 ⊙⟿1327**

78 Civil Rights

    78III Federal Remedies in General
        78k1323 Color of Law
        78k1327 k. Federal law or action. Most Cited Cases
    (Formerly 78k196.1)
  **Civil Rights 78 ⊙⟿1362**

78 Civil Rights

    78III Federal Remedies in General
        78k1361 Liability of Federal Government and Its Agencies and Officers
        78k1362 k. In general. Most Cited Cases
    (Formerly 78k208)

    Claims under §1983 only lie against persons acting under color of state law; claims against federal agencies or their officers are not cognizable. 42 U.S.C.A. § 1983.

**[22] Records 326 ⊙⟿63**

326 Records

326II Public Access
    326II(B) General Statutory Disclosure Requirements
        326k61 Proceedings for Disclosure
        326k63 k. Judicial enforcement in general.
Most Cited Cases

    Failure to exhaust administrative remedies required by the Freedom of Information Act (FOIA) precludes a federal court of subject matter jurisdiction over a requester's claims. 5 U.S.C.A. § 552(a)(6)(A)(ii).

Enrique Caraveo, Lemon Grove, CA, pro se plaintiff.

David S. Warner, Littler Mendelson, P.C., New York, NY, for Nielsen defendants.

Danna Drori, James B. Comey, United States Attorney for the Southern District of New York, New York, NY, for Federal defendants.

REPORT AND RECOMMENDATION

ELLIS, Magistrate J.
          I. INTRODUCTION
  **\*1** On October 31, 2001, *pro se* plaintiff Enrique Caraveo ("Caraveo") filed a complaint against twenty-five defendants for a wide-range of claims stemming from his employment with defendant Nielsen Media Research, Inc. ("NMR"). On April 8, 2002, Judge Sand ordered Caraveo to file a second amended complaint, clarifying which claims and factual allegations referred to which defendants. [FN1] On May 22, 2002, defendants NMR, VNU, ACNielsen Corporation, Gabriel Oviedo, Fred Rogers, Bob Burns and Manuel Crujeiras (collectively "Nielsen defendants") filed a motion to dismiss twenty-two of Caraveo's twenty-four claims for failure to state a cause of action. On June 6, 2002, defendants United States Equal Employment Opportunity Commission ("EEOC"), Michele Megerle, Guillermo Zamora, Pedro Esquivel, Ida L. Castro, Cari M. Dominguez and Jacqueline R. Bradley (collectively "the Federal defendants") filed a motion to dismiss Caraveo's claims in their entirety. For the reasons set forth below, I recommend that the Nielsen defendants' motion to dismiss be GRANTED with respect to Counts 3–17 and 19–23 and DENIED IN PART with respect to Count 18, and that the Federal defendant's motion to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

dismiss be GRANTED.

> FN1. Caraveo initially amended his complaint on December 17, 2001, without leave of the Court. His second amended complaint, filed on May 8, 2002, in compliance with Judge Sand's order, was titled "Amended Complaint" and will hereinafter be referred to by that designation.

## II. BACKGROUND

The following are facts as stated in Caraveo's amended complaint, which this Court takes to be true for purposes of the defendant's motion. Caraveo began working as a recruiter for NMR in December, 1988. *See* Amended Complaint at ¶ 4. The position required Caraveo to visit households around the country and entailed cross-country travel and computer data processing. *Id.* at ¶¶ 5–7. In July, 1998, Caraveo suffered a stroke which lead to problems with his vision. *Id.* at ¶ 8. In March, 1999, Caraveo suffered a vein occlusion and was diagnosed as legally blind in his left eye. *Id.* at ¶ 11. He notified NMR of his visual problems that same month. *Id.* at ¶ 14. In June, 1999, NMR received notification from Caraveo's treating physician about his eye problems. *Id.* at ¶ 20. Further, in March, 2000, three different physicians wrote letters to NMR, explaining his health conditions and limitations. *Id.* at ¶ 21. On March 13, 2000, on advice from his physician, Caraveo asked NMR that he be reassigned to a position which did not involve continuous driving. *Id.* at ¶ 22. NMR denied Caraveo's request and suggested that he apply for disability benefits. *Id.* at ¶¶ 23–24. Caraveo was removed from NMR's payroll. *Id.* The following day, Caraveo applied for disability benefits through defendant Metropolitan Life Insurance, Inc. ("MetLife"). *Id.* at ¶ 25.

On March 21, 2000, Caraveo once again requested that he be transferred, and again his request was denied. *Id.* at ¶¶ 29–30. After consulting his physician, Caraveo decided to go on short-term disability as provided by NMR while he sought another job which did not require extensive driving. *Id.* at ¶¶ 36, 39. NMR, however, demanded that Caraveo return to work or they would consider him to have abandoned his job. *Id.* at ¶ 49. By letter dated April 19, 2000, MetLife terminated Caraveo's disability benefits without having reviewed his medical records. *Id.* at ¶ 53. MetLife further determined that Caraveo did not need any special accommodation. *Id.* at ¶

54. Caraveo once again renewed his request to be transferred to another position, which NMR denied. *Id.* at ¶¶ 56–57. However, on May 5, 2000, Caraveo was informed that he could be transferred to New York City, where he could use mass transit to travel. *Id.* at ¶ 67. On May 23, 2000, Caraveo appealed MetLife's denial of disability benefits. *Id.* at ¶ 71. On May 27, 2000, Caraveo was flown to New Jersey. *Id.* at ¶ 73. Caraveo repeatedly received limited work assignments. *Id.* at ¶¶ 81–83. On July 10, 2000, NMR terminated Caraveo's employment. *Id.* at ¶ 88.

**\*2** On July 17, 2000, Caraveo filed a discrimination claim against NMR with the EEOC. *Id.* at ¶ 105. Throughout the next two months, Caraveo unsuccessfully attempted to get documents from both NMR and MetLife related to his disability claim. *Id.* at ¶¶ 109–116. Caraveo also had repeated contact with the EEOC regarding his charges against NMR, his ability to include MetLife in his charge, and problems with responding to NMR's allegations about his work performance. *Id.* at ¶¶ 127–146. By December, 2000, Caraveo received a letter from the EEOC asking him to rebut evidence provided by the Nielsen defendants. *Id.* at ¶ 136. Caraveo phoned the EEOC to inform them that he did not have enough information to rebut any of the Nielsen defendant's allegations. *Id.* at ¶ 137. He was informed, however, that the Nielsen defendant's submissions were private and that he must respond to the letter sent to him by the EEOC. *Id.* at ¶ 138. On January 1, 2001, Caraveo sent in a response letter. *Id.* at ¶ 139. On May 7, 2001, Caraveo called the EEOC to inform it that he did not have enough information to adequately rebut any charges asserted by the Nielsen defendants. *Id.* at ¶ 145. During January and February, Caraveo made repeated attempts to gather more information from the EEOC concerning the Nielsen defendant's submissions, as well as information on how to amend his complaint. *Id.* at ¶¶ 146–155. These attempts consistently met with failure. *Id.* On July 20, 2001, Caraveo received a letter indicating that his charges had been dismissed and a right to sue letter. *Id.* at ¶ 147. On October 31, 2002, Caraveo filed this action.

## III. DISCUSSION

A. Standard of Review under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

Federal Rules of Civil Procedure should be granted only if it appears beyond doubt that " 'no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hishon,* 467 U.S. at 73. The Court does not, however, have to accept as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) (*citing* 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266–69 (2d ed.1984)). The review is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]" *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996).

Pleadings prepared by *pro se* plaintiffs are held to less stringent standards than those prepared by lawyers. *See Boddie v. Schneider,* 105 F.3d 857, 860 (2d Cir.1997). Thus, some courts have considered factual allegations in opposition papers by *pro se* plaintiffs. *See, e.g., Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering allegations in *pro se* plaintiff's affidavit submitted in opposition to motion to dismiss); *Riordan v. Am. Fed'n of Gov't Employees, AFL–CIO,* 2001 WL 1352464, at * 3 n. 5 (S.D.N.Y. Nov.1, 2001) (considering factual allegations in affidavit that were consistent with allegations in the amended complaint); *Burgess v. Goord,* 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan.26, 1999) (*citing Donahue v. United States Dep't of Justice,* 751 F.Supp. 45, 49 (S.D.N.Y.1990) ("The policy reasons favoring liberal construction of pro se pleadings warrant the Court's consideration of the allegations contained in plaintiffs' memorandum of law, at least where those allegations are consistent with the allegations in the complaint.")). The Second Circuit has commanded that "[w]hen considering motions to dismiss a *pro se* complaint such as this, courts must construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Board of Education of the City of New York,* 287 F.3d 138,

145–146 (2d Cir.2002) (citation omitted). Further, "[t]his is especially true when dealing with *pro se* complaints alleging civil rights violations." *Id.* at 146.

**\*3** *Pro se* plaintiffs are not, however, completely relieved of pleading requirements. In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (*quoting* 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[1] [b] (3d ed.1997)); *see also Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) (stating that civil rights complaints "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983").

B. The Nielsen Defendant's Motion

1. Civil Conspiracy Claims (Counts 3, 4, 5, 24)

[1] In counts 3 through 5, Caraveo alleges that the Nielsen defendants and MetLife conspired to violate the New York State Human Rights Law ("NYSHRL"), codified at N.Y. Exec. Law § 296, the New York City Human Rights Law ("NYCHRL"), codified at N.Y. City Admin.Code § 8–107, and the Texas Commission on Human Rights Act ("TCHRA"), codified at Tex. Lab.Code Ann. §§ 21.001–22.004. As courts within this district have observed, "[t]o establish a prima facie case for conspiracy under New York law, a plaintiff must allege the primary tort and the following four elements: (1) a corrupt agreement between two or more persons, (2) an overt act in furtherance of the agreement, (3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage or injury." *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.,* 26 F.Supp.2d 593, 602 (S.D.N.Y.1998). Under Texas law, "[t]he elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Walsh v. America's Tele–Network Corporation,* 195 F.Supp.2d 840, 850 (E.D.Tex.2002) (citations omitted).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

"It is well-settled that New York law does not recognize an independent cause of action for civil conspiracy." *Internet Law Library, Inc. v. Southridge Capital Management, LLC,* 223 F.Supp.2d 474, 490 (S.D.N.Y.2002). A plaintiff must first establish an independent, actionable tort. *See Savitsky v. Mazzella,* 2002 WL 664060 * 3 (S.D.N.Y.2002). Similarly, under Texas law, "[c]ivil conspiracy is an entirely derivative claim", and, "[a] plaintiff must plead and prove another substantive tort upon which to base a civil conspiracy claim." *Walsh,* 195 F.Supp.2d at 850. Caraveo alleges that the independent tort by the Nielsen defendants was tortious interference with a contract. *See* Plaintiff's Memorandum in Opposition to Nielsen Defendant's Motion to Dismiss ("Pl.Mem.") at 3. Under both New York and Texas law, however, a claim of tortious interference requires proof of the existence of a valid contract between a plaintiff and a *third party. See Foster v. Churchill,* 87 N.Y.2d 744, 749, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996); *Davis v. HydPro, Inc.,* 839 S.W.2d 137, 139 (Tex.App.Eastland 1992). Here, the Nielsen defendants were Caraveo's employers, and therefore not a third-party interfering with Caraveo's contract.

**\*4** [2] Even if Caraveo's complaint could be read to have alleged an independent tort, his civil conspiracy claims would still fail for failure to allege a meeting of the minds and any overt acts. Caraveo points to no facts and merely makes conclusory allegations of a conspiracy. These statements do not meet the standards of pleading a conspiracy claim under either New York or Texas law. *See Stewart v. Crosswalks Television Network,* 2002 WL 265162 *6 (S.D.N.Y.2002); *Hatch v. Abramson,* 2002 U.S. Dist. LEXIS 2042 *8 (N.D.Tex.2002). Therefore, counts 3 through 5 should be dismissed.

[3] In Count 24, Caraveo alleges that the Nielsen defendants conspired to deny him employment and disability insurance benefits because of his disability, in violation of 42 U.S.C. § 1985(3). Section 1985(3), however, "creates no substantive rights but merely provides a remedy for violation of the rights it designates." *Sherlock v. Montefiore Medical Center,* 84 F.3d 522, 527 (2d Cir.1996). Further, Section 1985(3) cannot be used to enforce statutes which already provide a mechanism for relief. *Id.* (noting that Section 1985(3) cannot be used to enforce rights created by Title VII of the

Civil Rights Act of 1964 ("Title VII") or the Age Discrimination in Employment Act ("ADEA") because those statutes have their own enforcement and conciliation mechanisms). In the case before this Court, Caraveo attempts to use Section 1985(3) to enforce the Americans with Disabilities Act ("ADA"), TCHRA, NYSHRL, and NYCHRL. However, all of these statutes have their own enforcement mechanisms, similar to those in Title VII and the ADEA. Therefore, Count 24 of Caraveo's complaint should be dismissed.

2. Employee Retirement Income Security Act of 1974 ("ERISA") Related Claims

a. ERISA Preemption (Counts 7, 8, 9, 10, 11)

Counts 7, 8, and 9 of Caraveo's complaint assert causes of action for fraud, breach of contract and breach of the implied covenant of good faith and fair dealing. Count 10 alleges deceptive trade practices and false advertising in violation of the New York General Business Law ("GBL") §§ 349(a) and 350. Count 11 claims a violation of the Texas Deceptive Trade Practices Act. Both parties acknowledge that ERISA supersedes state laws insofar as they relate to employee benefit plans. *See Greenes v. Empire Blue Cross and Blue Shield,* 1996 WL 640873 *2 (S.D.N.Y.1996) (*citing* 29 U.S.C. § 1144(a)). Furthermore, "[t]he Supreme Court has consistently afforded a broad, though not absolute, reading to this preemption provision." *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 9 (2d Cir.1992).

[4] The Nielsen defendants argue that all state claims are preempted by ERISA. Caraveo alleges, however, that these causes of action are unrelated to the administration of claims for benefits. He further alleges that the plan is a Salary Continuation Plan and not an ERISA plan. *See* Plaintiff's Memorandum in Opposition to Nielsen Defendant' Motion to Dismiss ("Pl.Mem.") at 6. However, the law in this circuit is clear, and "[a] state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 288 (2d Cir.1992).

**\*5** Caraveo's common law claims of (1) breach of contract, (2) breach of the covenant of good faith and fair

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

dealing, and (3) fraud clearly relate to the administration of the benefits plan. Accordingly, they relate to an ERISA plan and are thus preempted. *See Cerasoli v. Xomed, Inc., 952 F.Supp. 152, 156 (W.D.N.Y.1997)* (finding that breach of contract cause of action preempted by ERISA because plaintiff's claims ultimately went to the failure to provide benefits due to the plan's administration). Counts 7, 8 and 9 should be dismissed.

Similarly, Caraveo's claims under the GBL must also fail. Section 349 of the GBL prohibits the use of "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349 (McKinney's 2001). Within this district, courts typically apply a two-pronged approach to determining ERISA preemption of state laws. First, courts look to whether ERISA plans are explicitly referred to by the law. Second, courts examine "whether preemption would serve the basic purposes of § 514(a): namely, 'to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.'" *Greenes, 1996 WL 640873 at *2* (*citing New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Company, 514 U.S. 645, 657, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)*). While the GBL makes no explicit reference to ERISA plans, Caraveo's application of it would affect the administration of the plan. "Preemption may be proper when state laws mandate employee structures or their administration." *Id.* Count 10 should be dismissed.

Finally, courts in the Fifth Circuit have made clear that ERISA preempts the Texas Deceptive Trade Practices Act. *See Lain v. Unum Life Insurance Company of America, 27 F.Supp.2d 926 (S.D.Tex.1998)*. Count 11 should be dismissed.

b. ERISA Retaliation Claim (Count 12)

[5] Count 12 of Caraveo's complaint alleges a retaliatory firing in violation of Section 510 of ERISA. Section 510 provides: "It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]...." 29 U.S.C. § 1140 (1982). The Nielsen defendants maintain that Caraveo's allegations are

insufficient to support his ERISA retaliation claims. The Court agrees. Caraveo's facts detail that he was terminated while an appeal of his benefits determination was pending. He does not allege that the firing was done with the specific intent of depriving him of his right to appeal. *See, e.g., Suozzo v. Bergreen, 2002 WL 1402316 *5 (S.D.N.Y.2002)* (allowing an ERISA retaliation claim to survive a 12(b)(6) motion because plaintiff alleged that his firing was in response to his assertion of rights under an ERISA plan). As courts within this district have repeatedly held, "[n]o ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Titsch v. Reliance Group, Inc., 548 F.Supp. 983, 985 (S.D.N.Y.1982), aff'd mem., 742 F.2d 1441 (2d Cir.1983)*. Count 12 should be dismissed.

c. ERISA Criminal Fraud Claim (Count 13)

**\*6** Count 13 of Caraveo's complaint is made pursuant to 29 U.S.C. § 1141. However, this section "is a criminal provision of ERISA, which does not provide for a private right of action." *Levine v. Crowntuft Manufacturing Corp., 1991 U.S. Dist. LEXIS 10170 * 9 (S.D.N.Y.1991)*. Count 13 should be dismissed.

d. Failure to Provide Documents (Count 14)

[6] Count 14 of Caraveo's complaint alleges that the Nielsen defendants violated 29 U.S.C. § 1132(a) and/or (c). This statute allows a private right of action against plan "administrators" for failure to provide certain documents to beneficiaries upon request. *See 29 U.S.C. § 1132(c)(1)*. The Nielsen defendants assert that they cannot be liable under the statute because MetLife was the plan administrator. Caraveo counters that a plan sponsor can be deemed a "de facto" administrator by the courts. *See Law v. Ernst & Young, 956 F.2d 364 (1st Cir.1992)*. However, in *Law,* the court held the plan sponsor liable under section 1132(c) because the plan sponsor had functioned as the administrator. Here, Caraveo admits that he contacted MetLife with respect to his short term disability benefits, therefore demonstrating knowledge that MetLife was the plan administrator. The Nielsen defendants may not be held liable under section 1132, and Count 14 should be dismissed as to the Nielsen defendants.

e. Breach of Fiduciary Duty under ERISA (Count 15)

[7] Caraveo alleges that the Nielsen defendants

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

violated a fiduciary duty owed to him pursuant to 29 U.S.C. § 1104(a)(1)(A)(i). However, 29 U.S.C. § 1002(21)(A) defines a fiduciary as a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its asserts." In this case, Caraveo alleges that MetLife, and not the Nielsen defendants, had discretionary authority and control over the denial of his benefits. Therefore, as the complaint has been pleaded, Count 15 should be dismissed with respect to the Nielsen defendants.

3. Privacy Claims

a. Common Law Right of Privacy (Count 16)

[8] In Count 16, Caraveo alleges an invasion of privacy under New York common law. However, as numerous courts have recognized, "there is no common-law right of privacy [under New York law] and the only available remedy is that created by Civil Rights Law §§ 50 and 51." *Freihofer v. Hearst Corporation,* 65 N.Y.2d 135, 140, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985); *Zoll v. Jordache Enterprises Inc.,* 2002 WL 31873461 *15 (S.D.N.Y.2002); *Richardson v. Newburgh Enlarged City School District,* 984 F.Supp. 735, 748 (S.D.N.Y.1997). Indeed, "the New York Civil Rights Law was enacted expressly because there was no common law recognition of claims for violations of the right of privacy." *Zoll,* 2002 WL 31873461 at *15.* Further, the statutory protection for right of privacy cases is limited "only to the extent of affording a remedy for commercial exploitation of an individual's name, portrait or picture, without written consent." *Freihofer,* 65 N.Y.2d at 140, 490 N.Y.S.2d 735, 480 N.E.2d 349. For this claim, Caraveo relies on *Doe v. City of New York,* 15 F.3d 264 (2d Cir.1994). *Doe,* however, concerned the constitutional right of privacy against a governmental entity. *Id.* at 276. The defendants in this case are private actors, and Caraveo cannot enforce a constitutional right against them. *See Polin v. Dun & Bradstreet, Inc.,* 768 F.2d 1204, 1207 (10th Cir.1985) (*citation omitted* ) (recognizing that a constitutional right of privacy "exists only against the acts of a federal or state government ... it does not extend to a private party."). Count 16 should be dismissed.

b. Texas Medical Practice Act/Texas Occupational Code

(Count 17)

*7 [9] Caraveo's seventeenth cause of action is pleaded under Article 4495b of the Texas Civil Statutes, Tex. Acts 1999, 76th Leg., ch. 388, § 6(a) (eff.Sept. 1, 1999) ("the Texas Medical Practice Act"). This provision, however, was repealed in 1999. Caraveo alleges that the statute was recodified at Tex. Occ.Code § 151.002(a)(13). This latter citation, however, sets forth definitions as part of an act which regulates physicians in Texas. Even if, however, the Texas Medical Practice Act has indeed been recodified under the Texas Occupational Code, this statute provides for administrative and criminal regulation, not a private cause of action. *See Cole v. Huntsville Memorial Hospital,* 920 S.W.2d 364, 372–73 (Tex.App.1996). Count 17 should be dismissed.

c. New York Public Health Law (Count 18)

[10] Count 18 alleges a violation of New York Public Health Law ("NYPHL") § 18(6). This provision, in part, mandates that whenever patient information is to be released to a party other than the patient, written consent must be obtained in advance before such disclosure may occur. *See* N.Y. Pub. Health Law § 18(6). The Nielsen defendants argue that Caraveo has not alleged facts sufficient to support his claim. The Court disagrees. In the Amended Complaint, Caraveo alleges that both the Nielsen defendants and MetLife "disclosed intimate details about plaintiff's medical condition to third parties." *See* Amended Complaint ¶ 227. Caraveo further alleges that "[p]laintiff did not authorize disclosure of private facts to third parties." *Id.* at ¶ 231. Nothing within the NYPHL requires that pleadings specify anything beyond notice pleading. Count 18 of the complaint should not be dismissed.

d. ADA "Confidentiality Provision" (Count 19)

[11] In Count 19, Caraveo alleges a violation of 42 U.S.C. § 12112. This section of the ADA prohibits employers from conducting medical examinations and inquiries related to employment and hiring in certain situations. While it has a limited confidentiality provision, the provision is reserved for information obtained as a result of lawful employer mandated physical examinations. *See* 42 U.S.C. § 12112(d)(3)(B); *see also Norman–Bloodsaw v. Lawrence Berkeley Laboratory,* 135 F.3d 1260, 1273–74 (9th Cir.1998); *Smith v. University of*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

*State of New York,* 1997 WL 800882 *14 (W.D.N.Y.1997).* Caraveo does not allege that any information disclosed by the Nielsen defendants was collected as a result of mandatory health testing by them as the employer. Count 19 should be dismissed.

4. Practicing Medicine Without a License Claim (Count 20)

[12] Caraveo asserts a claim of practicing medicine without a license in violation of New York Education Law § 6521 and the Texas Medical Practice Act. As discussed above, the Texas Medical Practice Act does not allow for a private cause of action. Similarly, New York Education Law § 6511 provides for criminal prosecution for violations of § 6521, and penalties which are to be asserted by the New York Board of Regents. *See* N.Y. Educ. Law § 6511. There is no private cause of action under § 6521. *See Nassau Neuropsychiatric Soc., Inc. v. Adelphi University,* 18 N.Y.2d 370, 375–76, 275 N.Y.S.2d 511, 222 N.E.2d 380 (1966). Count 20 should be dismissed.

5. Breach of Contract and Tortious Interference with Employment Claims

a. Tortious Interference with Employment (Count 21)

**\*8** [13] In Count 21, Caraveo alleges that the Nielsen defendants tortiously interfered with his employment with NMR. As the Nielsen defendants point out, "the tort of interference with an employment contract cannot lie against ... a party to the alleged employment contract." *Kosson v. Algaze,* 203 A.D.2d 112, 610 N.Y.S.2d 227, 228 (1st Dep't.1994). In his opposition papers, Caraveo acknowledges that this cause of action cannot lie against NMR, but argues that it can lie against the individually named defendants who were in NMR's employ. *See* Pl. Mem. at 18. However, as the Second Circuit has observed, "[i]n order to show that a defendant-employee is a "third party" [to succeed on a tortious interference claim], a plaintiff must show that the defendant-employee has exceeded the bounds of his authority." *Finley v. Giacobbe,* 79 F.3d 1285, 1295 (2d Cir.1996). Caraveo makes no allegations, nor points to any facts, showing that the individually named Nielsen defendants exceeded the bounds of their authority. Count 21 should be dismissed as to the Nielsen defendants.

b. Breach of Contract (Count 22)

[14] Count 22 of Caraveo's complaint alleges a common law breach of contract. Caraveo concedes that he was an at-will employee, and his employment was terminable at any time by either party. He argues, however, that because NMR set up a short-term disability plan, this was an implied contract. For support, Caraveo relies upon *Leonelli v. Pennwalt Corporation,* 887 F.2d 1195 (2d Cir.1989), a case in which the court denied defendant's motion to dismiss a common law breach of contract claim. The court reasoned that the defendant has set up a system whereby employees had come to rely on being granted short-term disability before making a decision to terminate the employee. *Id.* at 1198. In the case before this Court, plaintiff has not alleged facts necessary to maintain a promissory estoppel action. Further, unlike *Leonelli,* Caraveo's claim was rejected before his termination. Therefore, Caraveo cannot make out the existence of a contract. Count 22 should be dismissed.

6. ADA Claim (Count 6)

[15] Caraveo alleges that the Nielsen defendants violated 42 U.S.C. §§ 12181–12189 ("Title III") of the ADA. Title III relates to goods and services provided by a public accommodation. *Id.* at § 12182. As part of its definition section, Congress determined that an insurance office is a public accommodation within the meaning of Title III. *Id.* at § 12181(7)(F). Courts within this circuit have determined that the underwriting practices of an insurance company are "services" within the meaning of Title III. *See Pallozzi v. Allstate Life Insurance Company,* 198 F.3d 28, 31 (2d Cir.1999). Therefore, by discriminating against a person with a disability, an insurance company may be in violation of Title III. However, the Second Circuit has noted that Title III does not cover employers who provide insurance for their employees through a third-party insurance company. Citing *Parker v. Metropolitan Life Insurance Company,* 121 F.3d 1006 (6th Cir.1997) with approval, the Second Circuit has noted that "Title III does not regulate the terms and conditions of a long-term disability insurance plan offered by an employer to its employee through an insurance company." *See Pallozzi,* 198 F.3d at 33 (*citing Parker,* 121 F.3d at 1010–14). Therefore, as a matter of law, a claim alleging a violation of Title III may not be maintained against the Nielsen defendants. Count 6 should

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

be dismissed as to the Nielsen defendants.
7. Negligent and Intentional Infliction of Emotional Distress (Count 23)

**\*9** [16] In Count 23, Caraveo alleges both negligent and intentional infliction of emotional distress. However, the New York Worker's Compensation Law provides the exclusive remedy for injuries resulting from negligence in the workplace. *See* N.Y. Workers' Comp. Law §§ 10, 11, 29; *Arroyo v. Westlb Administration, Inc.,* 54 F.Supp.2d 224, 232 (S.D.N.Y.1999). Therefore, Caraveo's claim of negligent infliction of emotional distress should be dismissed.[FN2]

> FN2. In Caraveo's opposition papers, he indicates that he will amend his complaint to add a violation of the N.Y. Workers' Compensation Law. The Nielsen defendants asked the Court to preemptively deny this claim. As Caraveo has not sought leave of the Court to amend his complaint at this date, I need not address the propriety of bringing a claim against the Nielsen defendants under the Workers' Compensation Law.

[17] Caraveo's claim of intentional infliction of emotional distress ("IIED") should also be dismissed. "New York courts are exceedingly wary of claims for intentional infliction of emotional distress in the employment context." *Mariani v. Consolidated Edison Company of New York, Inc.,* 982 F.Supp. 267, 275 (S.D.N.Y.1997). New York courts have established a four-pronged test for determining an IIED claim: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional stress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Company, Inc.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). The first prong of the test, which "serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine," is the most difficult to prove. Indeed, in the handful of cases where a New York court has upheld an IIED cause of action in an action against an employer, the conduct complained of was "outrageous in character, and extreme in degree." *Mariani,* 982 F.Supp. at 277 (citations omitted). The facts

which Caraveo has alleged, including "that defendants conspired to produce fraudulent reports in order to interfere with plaintiff's rights, to emotionally and economically retaliate against him, and to deprive him of his constitutional rights," are not the types of allegations which courts have found to meet the standard of the first prong of the test. *See, e.g., O'Reilly v. Executone of Albany, Inc.,* 121 A.D.2d 772, 503 N.Y.S.2d 185, 186 (3d Dep't 1986) (allegations of sexual harassment and battery); *Collins v. Wilcox, Inc.,* 158 Misc.2d 54, 56–67, 600 N.Y.S.2d 884 (Sup. Ct N.Y.1992) (same); *Hughes v. Patrolmen's Benevolent Association of the City of New York,* 850 F.2d 876 (2d Cir.1988) (allegations included an attempt to frame a police officer for the death of another); *Zaffino v. Surles,* 1995 WL 146207 (S.D.N.Y.1995) (plaintiff complained of being locked out of his office, shunted to a filthy, cluttered storage room, stripped of all executive responsibilities, relegated to menial tasks, deprived of elevator and mail keys, deprived of a parking spot, removed from executive meetings and required to report in person in a subordinate civil service rank.). The facts alleged by Caraveo in his complaint do not rise to the level of extreme and outrageous conduct necessary for an IIED cause of action. Count 23 should be dismissed entirely as to the Nielsen defendants.

C. The Federal Defendant's Motion

1. The Court Lacks Personal Jurisdiction over the Individually Named Federal Defendants

**\*10** [18] As the Second Circuit has noted, "[i]n a federal question case, where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997) (citations omitted). None of the statutes Caraveo has relied upon provide for national service of process. Further, "[i]n diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York." *DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir.2001). Pursuant to New York's C.P.L.R. § 302(a), personal jurisdiction may only be established over non-domiciliaries in the following manner:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

1. [If the defendant] transacts any business within the state or contracts anywhere to supply goods or services anywhere in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a). None of the individually named Federal defendants have the necessary contacts for this Court to assume jurisdiction over them. None lives in New York, works in New York, owns, uses or possesses property in New York, transacts business in New York, solicits business in New York, nor receives any revenue from New York. See Declaration of Guillermo Zamora at ¶¶ 2–6; Declaration of Pedro Esquivel at ¶¶ 2–6; Declaration of Michele Megerle at ¶¶ 3–8. Further, any telephone contact which the individually named Federal defendants may have had with New York in investigating Caraveo's claims do not rise to the level sufficient to establish personal jurisdiction in New York. See Fiedler v. First City National Bank of Houston, 807 F.2d 315, 318 (2d Cir.1986). Therefore, the claims against Michele Megerle, Guillermo Zamora and Pedro Esquivel in their individual capacities should be dismissed for lack of personal jurisdiction. Caraveo has moved in his reply papers that should this Court find a lack of personal jurisdiction over the individual defendants, his claims against them should be transferred to a court of

appropriate jurisdiction pursuant to 28 U.S.C. § 1631. For the reasons discussed below, Caraveo's request that his causes of action against the individually named defendants be transferred should also be denied.

2. Due Process Claims (Counts 25, 27, 28, 29)

*11 [19] The Federal defendant's spent a substantial amount of their brief on whether or not this Court could exercise subject matter jurisdiction over claims that the EEOC violated the ADA and the Administrative Procedure Act ("APA"). However, even reading Caraveo's complaint liberally, he has not advanced any causes of action against the Federal defendants under either statute. There is no need, therefore, to address the Federal defendant's arguments on these issues. In Count 25 of his complaint, Caraveo alleges that the EEOC violated his Fourteenth Amendment right to due process. However, the Fourteenth Amendment is applied against the states and not against the federal government. Even if plaintiff's complaint is construed as a claim under the Fifth Amendment, it still fails. His claim of due process violations stems from what he alleges was a failure of the Federal defendants to adequately investigate his claim. However, "[t]he circuits which have addressed [claims against the EEOC for failure to adequately investigate] have uniformly held that no cause of action against the EEOC exists for challenges to its processing a claim." Baba v. Japan Travel Bureau International, 111 F.3d 2, 6 (2d Cir.1997)(quoting Scherer v. Rose State College, 950 F.2d 661, 663 (10th Cir.1991) (citations omitted)). Courts within this district faced with claims similar to Caraveo's have found that "plaintiffs do not have a cause of action against the E.E.O.C. under the due process clause of the United States Constitution." Muniz v. State of New York, 1997 WL 576033 *3 (S.D.N.Y.1997).

The court in Muniz reviewed the analysis by the Fifth Circuit in Francis–Sobel v. University of Maine, 597 F.2d 15 (5th Cir.1979), and reached the same result. In Francis–Sobel, the court questioned whether it could perform judicial review as to the correctness of the EEOC's negative determination against the plaintiff, and held that it could not. 597 F.2d at 17. The court found that "the agency's action neither deprived the [plaintiff] of any interest she may have had independent of the EEOC nor denied her such substantial EEOC-administered benefits as to give rise to a constitutional claim." Id.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

[20] Caraveo cannot sustain a claim that any of the individual Federal defendants violated his Fifth Amendment rights. Although Caraveo never specifically alleges it, any action against the individual Federal defendants which would have merited a transfer of his claim pursuant to 28 U.S.C. § 1631 would be an action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A *Bivens* action would also be dismissed because "even [an] arbitrary and capricious denial of the investigative and conciliatory benefits the EEOC can provide to a charging party [does not] transgress[ ] the Due Process Clause in a way that would support the implication of a *Bivens*-type damage remedy." *Peavey v. Polytechnic Institute of New York,* 749 F.Supp. 58, 59 (E.D.N.Y.1990)(*citing Francis–Sobel v. University of Maine,* 597 F.2d 15, 18 (5th Cir.1979)). The Court should not exercise its power pursuant to 28 U.S.C. § 1631 to transfer Caraveo's claims against the individually named Federal defendants. For all of the foregoing reasons, Counts 25, 27, 28 and 29 of Caraveo's complaint should be dismissed.

c. Section 1983 Claim (Count 26)

**\*12** [21] Count 26 of Caraveo's complaint alleges a violation of 42 U.S.C. § 1983. However, claims under Section 1983 only lie against "persons acting under color of state law." Claims against federal agencies or their officers are not cognizable. *See Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 n. 4 (2d Cir.1991); *Robinson v. Overseas Military Sales Corporation,* 21 F.3d 502, 510 (2d Cir.1994). Count 26 should be dismissed.

d. Freedom of Information Act Claim (Count 30)

[22] Finally, Count 30 of Caraveo's complaint alleges a violation of the Freedom of Information Act ("FOIA"). Caraveo alleges that the EEOC refused to provide documents in his file which he requested. *See* Amended Complaint at ¶ 265. As the Supreme Court has noted, federal jurisdiction over FOIA claims are dependant upon a showing that the agency has (1) "improperly" (2) "withheld" (3) "agency records." *United States Department of Justice v. Tax Analysts,* 492 U.S. 136, 142, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). All three requirements must be met for a FOIA claim to survive a

12(b)(6) motion. Caraveo's claim, however, does not meet the first prong of the test. "FOIA only requires agencies to make records available upon request if the request is made in accordance with the agency's published rules concerning disclosure." *Mitchell v. Kemp,* 1992 WL 188355 \*4 n. 1 (S.D.N.Y.1992) (*citing* 5 U.S.C. § 552(a)(3)(B)). The Court in *Mitchell* went on to observe:

The EEOC has published regulations fully explaining the procedures to follow in making a FOIA request at 29 C.F.R. Part 1610. These regulations provide that for Commission records to be disclosed under FOIA, a written request for records must be made. 29 C.F.R. § 1610.5. The request must be clearly and prominently defined as a request for information under the FOIA. 29 C.F.R. § 1610.7(c).

*Id.*

Caraveo has not alleged facts to show that he complied with EEOC guidelines regarding FOIA requests. He asserted no facts indicating that his letters to the EEOC "clearly and prominently" identified his requests as being made pursuant to the FOIA. Furthermore, even if Caraveo's letters can be construed as FOIA requests, his complaint does not allege that he exhausted his administrative remedies as the FOIA requires. *See Thomas v. Office of the United States Attorney for the Eastern District of New York,* 171 F.R.D. 53, 55 (E.D.N.Y.1997) (*citing* 5 U.S.C. § 552(a)(6)(A)(ii)). "Failure to exhaust ... administrative remedies [required by the FOIA] precludes a federal court of subject matter jurisdiction over a requester's claims." *Id.* Accordingly, Count 30 should be dismissed.

IV. CONCLUSION

For the foregoing reasons, I recommend that the Nielsen defendants' motion to dismiss be GRANTED with respect to Counts 3–17 and 19–23 and DENIED IN PART with respect to Count 18, and that the Federal defendant's motion to dismiss be GRANTED.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)

(Cite as: 2003 WL 169767 (S.D.N.Y.))

to the chambers of the Honorable Leonard B. Sand, 500 Pearl Street, Room 1650, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (*per curiam* ); 28 U.S.C. § 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

S.D.N.Y.,2003.

Caraveo v. Nielsen Media Research, Inc.
Not Reported in F.Supp.2d, 2003 WL 169767 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.