```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
                                            Index No. 13 Civ 375
OXFORD HEALTH INSURANCE, INC.,              (AKH, J.)(ECF Case)
OXFORD HEALTH PLANS (NY), INC.,
UNITED HEALTHCARE INSURANCE
COMPANY OF NEW YORK, INC., and
UNITED HEALTHCARE SERVICES, INC.,

                      Plaintiffs,

        -against-

DANIEL HAMNER, M.D., DANIEL HAMNER
PHYSICIAN, P.C., DANIEL HAMNER,
M.D., P.C., ALLAN CHRISTOPHER AS
EXECUTOR FOR THE ESTATE OF ANNE M.
CHRISTOPHER, RICHARD HAMNER,
ERIKA MACBRIDE, RAINA HAMNER
and RAE BAYMILLER,

                      Defendants.

---------------------------------X
```

Richard Pu, Esq.
120 E. 90th St., 10C
New York, NY  10128
(212) 427-3665 (o)

Table of Contents

Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


POINT I-- PLAINTIFFS HAVE FAILED TO EFFECT SERVICE ON THE
          EXECUTOR . . . . . . . . . . . . . . . . . . . . . . 2

    1.  Governing Law . . . . . . . . . . . . . . . . . . . . 2

    2.  Plaintiffs Failed to Effect Service on AC . . . . . . 2


POINT II--     PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE CLAIM UNDER
               § 1962(d) . . . . . . . . . . . . . . . . . . . 4

    1.  Plaintiffs Rely Entirely on Conclusory Allegations . 6

    2.  As Reflected in the 7/31/13 Order, the Law of the Case
        is that Plaintiffs' Conspiracy Allegations Had to be
        Amended . . . . . . . . . . . . . . . . . . . . . . . 9

    3.  The 7/31/13 Order Reflects Dismissal for Failure to
        Allege a Single Conspiracy . . . . . . . . . . . . 11

    4.  The Amended Complaint Fails to Allege Facts Showing the
        Hub-and-Spoke Arrangement had a Rim . . . . . . . . 11


POINT III--    PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE CLAIM UNDER
               § 1962(c) . . . . . . . . . . . . . . . . . . 13

    1.  The Submission of the Forms was the Management of Ms.
        Christopher's Own Affairs, not the Affairs of the
        Alleged Enterprise . . . . . . . . . . . . . . . . 13

    2.  Plaintiffs Fail to Allege Facts Showing that Ms.
        Christopher Knew about the Enterprise . . . . . . . 15

<u>Overview</u>

Defendant Allan Christopher ("AC"), Executor for the Estate of Anne Christopher, submits this reply brief in further support of his motion to dismiss the Amended Complaint.  As shown below:

    1. With respect to service on AC, Plaintiff's service on the probate court in CT did not comply with Rule 4, which requires compliance with CPLR § 308;

    2. With respect to Plaintiffs' § 1962(d) claim, that claim is supported only by conclusory allegations, and not any allegation of fact;

    3. With respect to Plaintiffs' § 1962(c) claim, in filling in an enrollment form for herself, Ms. Christopher was managing her own affairs, not those of Hamner, notwithstanding that the forms may have been necessary and helpful for the perpetration of Hamner's larger fraud.

Accordingly, the Amended Complaint must be dismissed.

POINT I

<u>PLAINTIFFS HAVE FAILED TO EFFECT SERVICE ON THE EXECUTOR</u>

Defendant AC's initial brief showed that, because Pu refused to accept service, Plaintiffs were required to effect service under CPLR § 308.  AC Initial Brf. 11.  In response Plaintiffs acknowledge that Pu refused to accept service,  Pl. Opp Brf. 27, which Plaintiffs contend was done in bad faith.  <u>Id</u>.

Plaintiffs assert that they proceeded under Connecticut law, leading them to serve the CT probate court.  <u>Id</u>. 28.  But as shown below, Rule 4 required service in accordance with <u>New York</u> law, which prescribes the manner of service.

1.   <u>Governing Law</u>

FRCP 4(e) permits service on an individual like AC in only two ways:

> 1. service in accordance with the law of the state where the District Court is located, FRCP 4(e)(1)-- here New York;
>
> 2. in hand delivery, leave-and-mail, service on an agent, FRCP 4(e)(2).

Thus, AC couldn't be served in accordance with CT law.

2.   <u>Plaintiffs Failed to Effect Service on AC</u>

Here, Plaintiffs failed to effect service under FRCP 4. First, Plaintiffs don't purport that they effected service under 4(e)(2) by in-hand delivery, leave-and-mail, or service on an agent.  Pl. Opp Brf. 28.  Thus, under 4(e)(1), Plaintiffs were required to effect service in accordance with the law of the state where the District Court is located-- here, New York law. Service in accordance with Connecticut law won't do.

New York law requires service on an individual like AC by in-hand delivery or leave-and-mail, or after many unsuccessful attempts, by nail-and-mail.  CPLR 308.  Thus, service on the probate court in Connecticut law failed to comply with New York law.  Accordingly, Plaintiffs failed to effect service under FRCP 4.[1]

---

[1] On 8/9/13, after Plaintiff's Opposing Brief had been filed, Plaintiff purportted to serve AC by leaving the papers with with the Probate Court.  8/9/13 Aff. Serve, SDNY Website Doc. 51.  But the Probate Court wasn't AC's "AC's actual business, dwelling place or usual place of abode".  CPLR 308(2). Thus, AC has still not been served.

POINT II

PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE CLAIM UNDER § 1962(d)

In any event, Plaintiffs fail to allege a plausible claim under § 1962(d). AC's initial brief showed that § 1962(d) requires that the defendant 1) knew about the conspiracy; and 2) agreed to participate in a collective venture directed at a common goal. 9/4/13 AC Brf. 4 fn. 1; id. at 13-14.

Furthermore, AC's initial brief demonstrated that the factual allegations of the Amended Complaint, if true, show only a hub-and-spoke fact pattern, id. 6-7, which the courts have rejected as not supporting a ¶ 1962(d) claim. Id. 14, citing, First Nationwide Bank v. Gelt Funding, Corp., 820 F.Supp. 89, 97 (S.D.N.Y. 1993)(hub-and-spoke arrangement not a conspiracy). See also, Neiman Marcus Group, Inc. v. Dispatch Transport Corp., 2011 WL 1142922 p. 7, fn. 11 (S.D.N.Y.)(hub-and-spoke arrangement not a RICO enterprise); Conte v. Newsday, Inc, 703 F.Supp.2d 126 (E.D.N.Y. 2010)("These "hub and spokes" allegations are insufficient to support a conclusion that the various defendants were associated with one another for a common purpose."); First Nationwide Bank v. Gelt Funding, Corp., 820 F.Supp. 89, 98 (S.D.N.Y. 1993)("That series of discontinuous independent frauds is no more an "enterprise" than it is a single conspiracy.");

Cedar Swamp Holdings v. Zaman, 487 F.Supp.2d 444, 450 (S.D.N.Y. 2007)("allegations of a "hub-and-spokes" structure... do not satisfy the enterprise element of a RICO claim."). New York Automobile Ins. Plan v. All Purpose Agency & Brokerage, Inc., 1998 WL 695869 (S.D.N.Y.).

 Indeed, as the Court ruled at the 7/30/13 hearing:

"The only way they can do that is by alleging a conspiracy in the sense that <u>each of the members that received benefits was aware that as an organization others were also receiving benefits and that there was therefore a reasonable awareness that others were involved, making it a conspiracy</u>."

7/30/13 Tr. 7, A. 4 (emphasis supplied).

 New York Automobile Ins. Plan v. All Purpose Agency & Brokerage, Inc., 1998 WL 695869 (S.D.N.Y.) is on all fours. There, an incorporated insurance broker (called a "Producer") and its owner induced car owners to submit falsified applications to a government agency (the "Plan") for auto insurance. The Producer dealt with each of would-be insureds, but the would-be insureds didn't know about each other. The government agency issuing the insurance alleged a violation of § 1962(c), and moved for summary judgment thereon.

 In denying the motion, this Court noted the existence of a hub-and-spoke structure, and held that it constituted neither a conspiracy nor a RICO enterprise:

5

> "This is a classic "hub and spoke" conspiracy, in which the Producer-Defendants were the "hub" and the various Insureds (including the Insured-Defendants) were the "spokes". Such a scheme is not one true common law conspiracy nor is it a RICO enterprise."

1998 WL 695869 at p. 5, citing, First Nationwide Bank v. Gelt Funding, Corp., 820 F.Supp. 89, 97 (S.D.N.Y. 1993).

So what was needed is the so-called "rim", a showing that Ms. Christopher and the other Employee Defendants: 1) knew about the conspiracy; and 2) agreed to participate in a collective venture directed at a common goal.

1. Plaintiffs Rely Entirely on Conclusory Allegations

In response, Plaintiffs point only to conclusory allegations that Anne Christopher knew or participated in any a collective venture. In particular, Plaintiffs refer to allegations in their Amended Complaint:

> 1. at ¶ 282 that, "Hamner and the Employee members conspired ... to obtain group health insurance coverage";
>
> 2. at ¶ 285 that, "In exchange ... Christopher ... agreed to allow Hamner to submit false claims to Oxford";[2]

---

[2] The allegation at ¶ 285 is piece of bait-and-switch by Plaintiffs. It may be fair to infer from the transmission of the enrollment form that Ms. Christopher allowed Hamner to submit a claim for the acupuncture services he performed for her. See Amended Complaint ¶ 68. But it is implausible that Ms. Christopher allowed Hamner to submit $3 million of claims for
(continued...)

6

      3. at ¶ 288 that, "the Employee members, individually and collectively, agreed to allow Hamner to submit ... false claims";

      4. at ¶ 288 that, "Hamner and the Employee Members, individually and collectively, agreed to allow Hamner to submit ... false claims to Oxford";

      5. at ¶ 291 that, "The Employee members, individually and collectively, knew that their agreement to submit false information ... were part of a pattern of racketeering activity";

      6. at ¶ 294 that, "Defendants agreed to utilize and conduct the affairs of Hamner P.C. through a pattern of racketeering activity ...;"

      7. at ¶ 295 that, "Upon information and belief, Hamner and the Employee Members ... were aware that the other Employee Members were improperly enrolled;

      8. at ¶ 296 that, "Upon information and belief, Hamner and the Employee members ... were aware that the goal of the conspiracy was to obtain group health insurance..."

      9. at ¶ 297 that, "Upon information and belief, Hamner and the Employee Member, individually and collectively, agreed to commit at least two predicate acts".

Pl. Opp. Brf. 20-21.

Such allegations are painfully conclusory. There isn't, for example, a single allegation that:

    "On such and such a date, Anne Christopher had an oral conversation in which the parties stated that ..."

---

[2](...continued)
services he didn't perform, id. ¶ 67, or services of no medical value. Id. ¶ 72. Had Ms. Christopher or the other Employee Members realized Hamner would do that, they would have broken off their relationship.

Or,

> "On such and such a date, Anne Christopher sent Hamner a written communication stating that..."

There is nothing like that here.

As the Court held with respect to Plaintiffs' § 1962(c) allegation, there's a distinction between an argument and an allegation of fact:

> "I know your argument but you've got to allege it." 7/30/13 Tr. 25-26, A. 12-13.[3]

Here, similarly, there is only argumentation, not factual allegations. Needless to say, the conclusory allegations quoted from the Amended Complaint don't satisfy Twombley, and the § 1962(d) claim must be dismissed.

Furthermore, the contention that Anne Christopher participated in a joint venture isn't plausible. There's no allegation that Anne Christopher stood to gain any portion of the $3 million that Hamner allegedly obtained. Is it plausible that a defendant would agree to an arrangement where the defendant would get insurance benefits for acupuncture and the other party would get $3 million?[4] Come on! Twombley was decided to protect

---

[3] "A. ___" refers to the 9/4/13 Appendix submitted with AC's 9/4/13 Brief. "Reply A. ___" refers to the 9/30/13 Appendix submitted with this brief.

[4] Plaintiffs assert that Ms. Christopher received $8,000. Pl. Opp. Brf. 18, citing Amended Complaint ¶ 106. But as
(continued...)

8

people like Anne Christopher against the very kind of dragnet that Plaintiffs have thrown out, and the § 1962(d) claim must be dismissed.

2.  As Reflected in the 7/31/13 Order, the Law of the Case is that <u>Plaintiffs' Conspiracy Allegations Had to be Amended</u>

In response, Plaintiffs allege law-of-the case. Pl. Opp. Brf. 22. But the Court's remarks quoted by Plaintiffs were directed at Mr. Bruno, the lawyer for Hamner. 7/30/13 Tr. 7, A. 7.[5] When Anne Christopher's attorney Pu spoke, the Court held that the allegations of a conspiracy were inadequate. Turning to Plaintiffs' lawyer about Anne Christopher, the Court held that Plaintiffs <u>hadn't</u> alleged a single conspiracy:

> "I know your argument but you've got to allege it. So I am going to give you ten days. I'm going to grant the motion for leave to replead."

7/30/13 Tr. 25-26, A. 12.

That colloquy was then followed up with a 7/31/13 Order which required repleading of the conspiracy claims: "Plaintiffs shall file an amended complaint ... to amend their allegations of

---

[4] (...continued) Plaintiffs acknowledge, that was her salary at a time that Plaintiffs acknowledge she was employed by Hamner. Amended Complaint ¶ 106.

[5] Plaintiffs' brief mis-cite to page 6 of the 7/30/13 Transcript.

a RICO conspiracy."  7/31/13 Order, Reply A. 1.  So the law of the case is that Plaintiffs' allegations of conspiracy needed to be amended, not that they were adequate.

Furthermore, the 7/30/13 colloquy can't be binding against AC, because he wasn't before the Court.  As the 7/31/13 Order holds, in suing "The Estate of Anne M. Christopher", Plaintiffs sued the wrong party. 7/31/13 Order, Reply A. 1 ("Plaintiffs will file an amended complaint... to name the proper party representing the estate.").[6]  Thus, AC was never served and was never before the Court.  By the same token, it would be a violation of his due process rights to bind him by the 7/30/13 colloquy.  Accordingly, the colloquy gave rise to no law of the case binding AC.

---

[6] The colloquy preceding the 7/31/13 Order shows that AC was the proper party:

> "The Court: In New York you sue the executor?
>
> "Mr. Pu: yes.
>
> The Court: So-and-so as executor for the estate of Anne Christopher?
>
> Mr. Pu: Correct.
>
> The Court: All right.  Thanks."

7/30/13 Tr. 16, A. 8.

3. **The 7/31/13 Order Reflects Dismissal for Failure to Allege a Single Conspiracy**

Plaintiffs' also contend that the 7/31/13 Order issued after the 7/30/13 Colloquy did not reflect dismissal for failure to allege a single conspiracy. Pl. Opp. Brf. 23. But the Order hold that the conspiracy allegations needed to be repeated. 7/31/13 Order, Reply A. 1. Furthermore, the Order incorporates by reference the 7/30/13 colloquy, which shows that the dismissal was, at least in part, due to the failure to allege a single conspiracy. See discussion at p. 9, supra.

4. **The Amended Complaint Fails to Allege Facts Showing the Hub-and-Spoke Arrangement had a Rim**

Moving on from the law-of-the-case contention, the Amended Complaint fails to allege facts showing that the hub-and-spoke arrangement had what the Courts call a "rim"-- that is a conspiratorial bond between the spoke members placing them in a common venture. Such a bond requires that the spoke members knew about one another, knew about what each was doing with Hamner, and that they all enlisted onto the common venture.

Plaintiffs contend that it wasn't necessary to allege that Ms. Christopher knew each detail of the conspiracy. Pl. Opp. Brf. 24. But in the same breath, Plaintiffs acknowledge that:

"Plaintiffs are only required to allege that each

11

>defendant was aware of the general nature of the
>conspiracy and that the conspiracy extended beyond the
>defendant's individual role."

Pl. Opp. Brf. 24.

But striving to meet that standard, Plaintiffs rely on the same <u>conclusory</u> allegations as advanced to support the § 1962(d) claim. As shown elsewhere, there are no <u>factual</u> allegations, only argumentation, as the Court noted with respect to the § 1962(d) allegations. See discussion at p. 9, <u>supra</u>. Such allegations don't satisfy <u>Twombley</u>, and the § 1962(c) claim must be dismissed.

POINT III

PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE CLAIM UNDER § 1962(c)


In addition, AC's initial brief showed that Plaintiffs fail to allege a plausible claim under § 1962(c).  AC's initial brief showed that under Reves v. Ernst & Young, 510 U.S. 170, 113 S.Ct. 1163 (1993) ("Reves"), the defendant must participate in the "operation or management" of the enterprise, and must have some part in directing the affairs of the enterprise.  9/4/13 AC Brf. 19-20.  That means that the defendant a) must be conducting the enterprise's affairs, not his own, id. 20-21; b) must know about the enterprise's affairs, id. 21; c) must be a manager or a subordinate with broad discretion, id. 22-23.  In so doing, AC demonstrated that the Amended Complaint alleged no facts suggesting any of the above.  Id. 23-28.


1.  The Submission of the Forms was the Management of Ms. Christopher's Own Affairs, not the Affairs of the Alleged Enterprise

In response, Plaintiffs point to allegations that Ms. Christopher submitted forms misstating her eligibility, which Plaintiffs' contend  "clearly demonstrate Christopher's participation in the enterprise."  Pl. Opp. Brf. 11-12.  But as a matter of common sense, the filling in and transmitting the forms

13

constituted the management of Ms. Christopher's own affairs, not those of any enterprise. She was trying to get insurance coverage, not enabling Hamner to commit a $3 million insurance fraud. Her actions were thus taken for herself, not for the enterprise.

Plaintiffs dispute this, noting that Ms. Christopher's transmission of the forms was a but-for cause, permitting Hamner to bilk Oxford for $50,000:

> "Hamner P.C. billed and received over $1 million.... This fraud <u>but for</u> Christopher's active participation, which is demonstrated by her signature on enrollment forms containing false information and her signature authorizing Hamner P.C. to submit claims containing false information, which fraud indisputably brought Hamner P.C. significant income that it would never have received <u>but for</u> Christopher's participation."

Opp. Brf. 12 (emphasis supplied).[7]  <u>See also</u>, Opp. Brf. 14.

---

[7] In so doing, Plaintiffs disturbingly misstate what is in their own complaint. For example, Plaintiffs' brief asserts that Ms. Christopher helped the enterprise "by signing off on claim forms". Opp. Brf. 12, <u>citing</u> Amended Complaint ¶ 136, 166, 170. That suggests perhaps a physical act where she signs something; at a minimum it suggests a contact where Ms. Christopher is appraised of the contents of the claim forms and approves their filing.

But in fact the Amended Complaint doesn't allege any such knowing participation.

> "136. <u>Upon information and belief</u>, the Employee Members authorized ... Hamner P.C., to submit claims on their behalf...
>
> 166. ... Hamner P.C. misrepresented [certain
> (continued...)

But performing tasks that are merely necessary or helpful to the enterprise aren't sufficient. <u>United States v. Diaz</u>, 176 F.3d 52, 92 (1999)("the simple ... performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)"). But here, there were no allegations of fact suggesting that Ms. Christopher, in pursuing her own interests, meant to do something helpful to the enterprise.

2.  <u>Plaintiffs Fail to Allege Facts Showing that Ms. Christopher Knew about the Enterprise</u>

AC's initial brief showed that Plaintiffs fail to allege facts showing that Ms. Christopher even knew about the supposed enterprise. In response, Plaintiffs contend that that is rank speculation. Pl. Opp. Brf. 13.

Hunh? Haven't Plaintiffs gotten the roles reversed? Under

---

[7](...continued)
things]

> 167. ... Hamner P.C. billed $411,750.03 ...
>
> 168. ... Hamner P.C. billed $386,325.00...
>
> 169. ... Hamner P.C. billed $485.150.00 ...
>
> 170. ... Hamner P.C. billed $392,985.00 ...

Amended Compl. ¶ 136, 168-70. Thus, the text of the Amended Complaint belie Plaintiffs' assertion that Ms. Christopher "signed off" on the submission of false claims.

Twombley, it's the plaintiff who has the obligation to allege facts raising the discourse above the speculative level, not the defendant. The defendant has no obligation to raise any facts. And if the defendant points out missing factual allegations in the complaint, that's not speculation-- it's pointing out that the plaintiff is engaged in speculation.

Appearing to recognize that, Plaintiffs contend that Ms. Christopher "must have been aware of her fraud" because she was aware that she wasn't employed by Hamner. Pl. Opp. Brf. 13. But it doesn't suffice merely to allege scienter for an individual's limited fraud. Under Reves and its progeny, the individual must know of the affairs of the enterprise, which will be much greater than the individual's limited fraud.

And once again, Plaintiffs rely on conclusory assertions:

> "Christopher and the other Employees members 'were aware that the goal of the conspiracy was to obtain group health insurance for Hamner's family and close friends..." Pl. Opp. Brf. 13.

That's a good argument but where are the factual allegations showing that awareness?

In addition, Plaintiffs rely on § 295 of the Amended Complaint to show awareness. Opp. Brf. 13, citing Amended Compl. ¶ 295. But ¶ 295 contains only a conclusory allegation of awareness:

16

> "295. Upon information and belief... the Employee
> Members ... were aware that the other Employee Members
> were improperly enrolled in the ... Plan and obtaining
> health insurance coverage..."

Again, that's painfully conclusory, and insufficient as a matter of law.  Accordingly, Plaintiffs' § 1962(c) claim must be dismissed.


Dated: New York, NY
       September 30, 2013

*/s/ Richard Pu*

_____
                         Richard Pu

                   120 E. 90th St., 10C
                   New York, NY 10128
                   (212) 427-3665 (o)