```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
                                      Index No. 13 Civ 375
OXFORD HEALTH INSURANCE, INC.,        (AKH, J.)(ECF Case)
OXFORD HEALTH PLANS (NY), INC.,
UNITED HEALTHCARE INSURANCE           DEFENDANT ALLAN
COMPANY OF NEW YORK, INC., and        CHRISTOPHER'S ANSWER,
UNITED HEALTHCARE SERVICES, INC.,     COUNTERCLAIMS AND
                                      CROSSCLAIMS

                   Plaintiffs,
                                      Jury Trial Demanded
       -against-

DANIEL HAMNER, M.D., DANIEL HAMNER
PHYSICIAN, P.C., DANIEL HAMNER,
M.D., P.C., ALLAN CHRISTOPHER AS
EXECUTOR FOR THE ESTATE OF ANNE M.
CHRISTOPHER, RICHARD HAMNER,
ERIKA MACBRIDE, RAINA HAMNER
and RAE BAYMILLER,

                   Defendants.

---------------------------------X
```

DEFENDANT ALLAN CHRISTOPHER ("AC"), by his undersigned attorney, for his answer to Plaintiffs' Amended Complaint, and for his counterclaims and crossclaims, alleges as follows:

1. AC denies knowledge or information sufficient to form a belief as to the allegations contained in Plaintiffs' Amended Complaint, except that AC, in responding to:

    a. ¶¶ 8, 14, 15, 101, 105 admits the allegations thereof;

    b. ¶ 102-104, 107, 190, 191, 193, 194, 196, 197, 217-233, 281-300, denies the allegations therein;

    c. ¶ 16, admits that Hamner is a doctor, who maintained an office in New York, NY;

    d. ¶ 99, admits that Hamner represented that Anne Christopher ("Anne C.") was an employee of Hamner, P.C. and was eligible to enroll in the health benefit plan insured by Oxford;

    e. ¶ 100, denies that Anne C. made the misrepresentation alleged therein;

    f. ¶ 148, admits that Anne C. was Hamner's wife or ex-wife;

    g. ¶ 150, admits that prior to her death, Anne C. resided in Westport CT;

    h. ¶¶ 208, 210, denies that Anne C. caused any scheme or artifice to defraud Plaintiffs;

    i. ¶¶ 162, 175, 189, 198, 281, repeats his foregoing responses.

### As and for a First Affirmative Defense

2. Plaintiffs are barred from bringing this action by their inequitable conduct, including the disclosure of the medical information of persons treated by Hamner in violation of New York's Public Health Law § 18(6).

<u>As and for a Second Affirmative Defense</u>

3. Some or all of Plaintiffs' claims are barred by the applicable statute of limitations.

<u>As and for a Third Affirmative Defense</u>

4. Some or all of Plaintiffs' claims are barred by the applicable statute of frauds.

<u>As and for a Fourth Affirmative Defense</u>

5. Some or all of Plaintiffs' claims are barred by the doctrine of waiver.

<u>As and for a Fifth Affirmative Defense</u>

6. This Court lacks jurisdiction over the person of AC.

    a. Anne Christopher was divorced from Hamner in the early 1990s and moved to Westport shortly after the divorce. Her estate was probated in the courts of Connecticut.

    b. AC has no contacts with New York and, apart from filing papers in connection with the administration of Anne Christopher's estate in Connecticut, no contacts with Connecticut.

<u>General Allegations Regarding All Claims and Defenses</u>

7. AC:

    a. as a counterclaimant brings the below-mentioned counterclaim(s) against Plaintiffs; and

    b. as a crossclaimaint, brings the below-mentioned crossclaims against the "Hamner Defendants", as defined below.

1. <u>The Parties</u>

8. AC is an individual living outside of New York, Connecticut and Minnesota.  AC was the brother of the late Anne C., a resident of the State of New York up until around 1994, and of Connecticut thereafter.  Following Anne C.'s death around 11/11/11, AC served as the executor of Anne C.'s estate.

9. Plaintiffs are the following insurance companies:

    a. OHI, a corporation organized under the laws of the State of New York with its principal place of business in New York;

    b. OHPNY is an corporation incorporated under the laws of the State of New York with its principal place of business in Connecticut;

    c. UnitedHealthcare Insurance Company of New York, Inc. is a corporation incorporated under the laws of the State of New York with its principal place of business in New York.

Each of the Plaintiffs is an agent for the other Plaintiffs.

    10. The "Hamner Defendants" are Defendants:

        a. Daniel Hamner, a medical doctor;

        b. Daniel Hamner M.D., P.C. (Hamner and his P.C. collectively, "Hamner");

        c. Richard Hamner;

        d. Erika MacBride;

        e. Raina Hamner; and

        f. Rae Baymiller.

AC's Relationship with Hamner

    11. From 1/17/82 to the early 1990s, Anne C. was married to Hamner. They became divorced in the early 1990s, and Anne C. moved to Connecticut shortly thereafter.

    12. Hamner owed Anne C. a fiduciary duty. Amongst other things:

        a. Both before, during and after their divorce, the couple had a close and confidential relationship;

        b. At all relevant times before her death, Hamner and his company acted as Anne C.'s physician.

AC's Medical Malpractice Claim

    13. Anne C. was a life-long alcoholic, dependent on alcohol

to deal with the problems that beset her.

14. From the time of their marriage in 1982 to 7/27/11, Anne C. was in the continuous care of Hamner and Hamner P.C. as a patient of Hamner's medical practice.

15. Sound medical practice required Hamner to refer Anne to a substance abuse program, or to wean Anne C. off alcohol by the short term use of medicines such as anxiety medication.  Instead of doing that, over the course of a ten-year period, Hamner prescribed anxiety medication meant to be prescribed for at most six months, but which he in fact prescribed for as long as ten years.

16. As a result, Anne C.'s dependency on alcohol became worse.

17. As a result, she suffered pain and mental suffering and a diminished capacity to enjoy life, which can not at present be quantified.

18. In addition, in his capacity as Anne C.'s doctor, Hamner engaged in the conduct alleged of him in Plaintiff's Amended Complaint, as summarized below.

<u>Hamner's Breach of his Divorce Settlement with Anne C.</u>

19. In or about 10/31/01, Anne C. and Hamner entered into a settlement agreement to address certain issues remaining from

their divorce.

20. Pursuant to the terms thereof, Hamner (in his individual capacity) was required to pay $8,000 toward the cost of Anne C.'s health insurance coverage until November 1, 2008.

21. Rather than make the aforementioned payments, Hamner forged Anne C.'s signature onto enrollment forms, purporting therein that she was eligible to receive insurance coverage under an insurance plan established for the employees of his medical practice.

22. Thereafter, on 12/23/03 and 4/8/08 Hamner transmitted the forms to Plaintiffs using the wires and mails, as alleged at ¶¶ 204-205 of the Amended Complaint.

23. Anne C. in fact knew nothing about what Hamner was doing, including:

    a. the transmission of the enrollment forms;

    b. the making of false insurance claims for service he never performed;

    c. the rendering of medical services which had no medical benefit;

    d. the making of false insurance claims for services of no medical benefit.

24. In point of fact, Anne C. was simply a dupe of Hamner, who used her to advance his fraudulent scheme.

25. Nonetheless, because of Hamner's fraudulent conduct, Anne C.'s estate has been sued herein, and AC has been subjected to massive liability, and been required to pay or incur the attorneys fees described below.

AC's RICO Claims

26. AC incorporates by reference each of the allegations contained in the Amended Complaint except for the allegations at:

    a.  ¶¶ 102-104, 107, 190, 191, 193, 194, 196, 197, 217-233, 281-300 to the extent that they concern Anne C.;

    b.  ¶ 100 that Anne C. made certain misrepresentations;

    c. ¶ 208, 210 that Anne C. caused any scheme or artifice to defraud Plaintiffs.

27. AC specifically denies that Anne C. knew anything about the conduct of Hamner alleged in the Amended Complaint, including the transmission of the enrollment form and the submission of any false billings.

28. <u>The Enterprises</u>.  The RICO enterprises include:

    a. the enterprises alleged by Plaintiffs.

    b. the association between the Hamner Defendants, as defined herein (hereinafter, the "Hamner Defendants Enterprise").

29. <u>Additional Predicate Acts</u>.  In addition to the predicate

8

acts alleged by Plaintiffs, Hamner engaged in acts of money laundering. Amongst other things, Hamner used the $3 million obtained from Plaintiffs to advance his business interests. These included:

    a. developing, in 2005, an exercise video called the "Cave Man Workout", from which he made millions of dollars;

    b. purchasing, in October 2005, Rae Baymiller's apartment at 34 West 54th Street, New York, NY.

30. <u>AC's 1962(a) Claim</u>. An essential part of the operations of the enterprises was to conceal Hamner's activities.

31. To that end, Hamner used the proceeds of the insurance fraud to pay for the defense of the Hamner Defendants herein (other than Hamner himself).

32. By so doing, Hamner and his P.C. prevented the latter from bringing cross-claims against Hamner and his P.C., which would have revealed information about the actions and operations of the enterprises.

33. Furthermore, to conceal the activities of the enterprises, Hamner induced his lawyers to commit a violation of Rule 1.7 of the Rules of Professional Conduct.

    a. Rule 1.7, entitled "Conflict of Interest: Current Clients" provides in relevant part:

        "a lawyer shall not represent a client if a

9

reasonable lawyer would conclude that either:

> (1) the representation will involve the lawyer in representing differing interests"

b. Comment 28 to ABA Model Rule 1.7 regards some relationships as being so fundamentally antagonistic that consent to being represented by a single lawyer can not be effectively given:

"Whether a conflict is consentable depends on the circumstances. For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other...."

c. Here, Hamner and the other Hamner Defendants had interests that were so fundamentally antagonistic that Hamner and the other Hamner Defendants could not effectively consent to being represented by a single lawyer. Hamner had an interest in preventing the latter from disclosing information about his conduct. The Hamner Defendants had an interest in bringing a cross-claims against Hamner, including cross-claims for indemnification for and/or contribution toward their liability, and for damages. This was an irreconcilable conflict that could not be consented to.

34. <u>AC's § 1962(b) Claim</u>. Hamner used the proceeds of the insurance fraud to pay for the defense of the Hamner Defendants

herein other than Hamner and his P.C.

35. That enabled Hamner and his P.C. to control the other Hamner Defendants. For example, by paying the latter's costs of defense, Hamner and his P.C. prevented the latter from bringing cross-claims against Hamner and his P.C., which would have revealed information about the actions and operations of the enterprises.

36. <u>AC's 1962(c) Claim</u>. AC's 1962(c) claim is based on the allegations in Plaintiffs' Amended Complaint.

37. <u>AC's 1962(d) Claim</u>. AC's 1962(d) claim is based on the allegations in Plaintiffs' Amended Complaint.

<u>Anne C.'s and AC Damages</u>

38. By reason of the foregoing:

    a. Anne C. suffered pain and mental suffering and a diminished capacity to enjoy life in an amount that can't be quantified with any precision, but which AC believes is not less than $2 million;

    b. In defending against Plaintiff's claim, AC has already paid or incurred $35,500, and expects that sum to increase significantly. (The aforementioned sum doesn't include sums incurred for advancing the instant cross-claims.)

### AS AND FOR A FIRST COUNTERCLAIM (Disclosure of Confidential Medical Information)

39. AC repeats each of the foregoing allegations.

40. In bringing this law suit, Plaintiffs revealed confidential medical information of Anne C. and of each the Hamner Defendants in violation of New York Public Health Law § 18(6).

41. Without that information, Plaintiffs would not have been able to bring this action.

42. By reason of such violation, AC is entitled to:

   a. an order enjoining the use of such information in the prosecution of this action; and

   b. damages in the amount of any recovery by Plaintiffs plus AC's attorneys fees in defending against Plaintiffs' action.

### AS AND FOR A FIRST CROSSCLAIM (Indemnification and/or Contribution)

43. AC repeats each of the foregoing allegations.

44. By reason of the foregoing, if AC is adjudged liable to Plaintiffs, AC is entitled to indemnification or contribution from one or more of the Hamner Defendants.

AS AND FOR A SECOND CROSSCLAIM (Medical Malpractice)

45. AC repeats each of the foregoing allegations.

46. By reason of the physician-patient relationship between Hamner and Anne C.:

    a. Hamner owed Anne C. a duty of care;

    b. there existed between the two an implied contract to provide proper medical care.

47. By reason of the foregoing, Hamner engaged in acts of malpractice by:

    a. engaging in acts of negligence; and

    b. breaching the implied contract;

    c. engaging in the above-mentioned fraudulent activities.

48. Anne C. has satisfied all of the conditions precedent to bringing a claim for breach of the contract to provide medical services.

49. By reason of the foregoing, Anne C. suffered the aforementioned damages.

AS AND FOR A THIRD CROSSCLAIM (Breach of Fiduciary Duty)

50. AC repeats each of the foregoing allegations.

51. By his conduct, Hamner breached his fiduciary duty to

Anne C.

52. By their conduct, the Hamner Defendants other than Hamner induced Hamner to breach his fiduciary duties to Anne C.

53. In particular:

    a. Hamner forged Anne C.'s signature onto enrollment forms and transmitted the forms, thereby claiming that Anne C. was entitled to insurance coverage under the plan established for his medical practice;

    b. The claims were false.

    c. Hamner submitted the forms so that he could later falsely bill Plaintiffs for services that had not been performed or services that were of no medical benefit.

    d. Plaintiffs believed the representation in the forms and in Hamner's false billing, and in reliance thereon, paid Hamner roughly $3 million.

54. When Plaintiffs discovered the false billing, they commenced the instant action against AC, alleging that Anne C. was involved in a conspiracy to defraud Plaintiffs.

55. By reason of such breach, AC suffered the foregoing losses.


<u>AS AND FOR A FOURTH CROSSCLAIM (Breach of Divorce Settlement)</u>

56. AC repeats each of the foregoing allegations.

57. By reason of the foregoing, Hamner breached the divorce settlement agreement.

58. In particular:

   a. Hamner forged Anne C.'s signature onto enrollment forms and transmitted the forms, thereby claiming that Anne C. was entitled to insurance coverage under the plan established for his medical practice;

   b. The claims were false.

   c. Hamner submitted the forms so that he could later falsely bill Plaintiffs for services that had not been performed or services that were of no medical benefit.

   d. Plaintiffs believed the representation in the forms and in Hamner's false billing, and in reliance thereon, paid Hamner roughly $3 million.

59. When Plaintiffs discovered the false billing, they commenced the instant action against AC, alleging that Anne C. was involved in a conspiracy to defraud Plaintiffs.

60. Anne C. has performed all of the conditions precedent to bringing the instant claim for breach of the divorce settlement.

61. By reason of the foregoing, AC suffered the aforementioned losses.

## AS AND FOR A FIFTH CROSSCLAIM (Common Law Fraud)

62. AC repeats each of the foregoing allegations.

63. By reason of the foregoing, Hamner defrauded Plaintiffs into believing that Anne C. was engaged in a conspiracy to defraud Plaintiffs.

64. In particular:

   a. Hamner forged Anne C.'s signature onto enrollment forms and transmitted the forms, thereby claiming that Anne C. was entitled to insurance coverage under the plan established for his medical practice;

   b. The claims were false.

   c. Hamner submitted the forms so that he could later falsely bill Plaintiffs for services that had not been performed or services that were of no medical benefit.

   d. Plaintiffs relied on the representation in the forms and in Hamner's false billing, and paid Hamner roughly $3 million.

65. When Plaintiffs discovered the false billing, they commenced the instant action against AC.

66. By reason of the foregoing, AC suffered the aforementioned losses.

## AS AND FOR A SIXTH CROSSCLAIM (RICO, § 1962(a))

67. AC repeats each of the foregoing allegations.

68. By their conduct, the Hamner Defendants violated § 1962(a);

69. By reason of the foregoing AC suffered the aforementioned damages.

AS AND FOR A SEVENTH CROSSCLAIM (RICO, § 1962(b))

70. AC repeats each of the foregoing allegations.

71. By their conduct, the Hamner Defendants violated § 1962(b);

72. By reason of the foregoing AC suffered the aforementioned damages.

AS AND FOR A EIGITH CROSSCLAIM (RICO, § 1962(c))

73. AC repeats each of the foregoing allegations.

74. By their conduct, the Hamner Defendants violated § 1962(c);

75. By reason of the foregoing AC suffered the aforementioned damages.

AS AND FOR A NINETH CROSSCLAIM (RICO, § 1962(d))

76. AC repeats each of the foregoing allegations.

77. By their conduct, the Hamner Defendants violated §

1962(d);

78. By reason of the foregoing AC suffered the aforementioned damages.

WHEREFOR, AC demands judgment as follows:

| No. | Counterclaim/Crossclaim | Relief Demanded |
| --- | --- | --- |
| 1 | Right to Privacy (Counterclaim against Plaintiffs, jointly and severally) | Injunction against the use of confidential medical information, plus damages in the amount of any recovery by Plaintiff, plus AC's legal fees |
| 1 | Indemnification/Contribution (Crossclaim against Hamner Defendants) | Indemnification for, or contribution towards, the amount of any judgment entered against AC in favor of Plaintiffs |
| 2 | Medical Malpractice (Crossclaim against Hamner) | $ 2 million, and punitive damages of $25 million |
| 3 | Breach of Fiduciary Duty (Crossclaim against Hamner Defendants) | $ 2 million, and punitive damages of $25 million |
| 4 | Breach of Divorce Settlement (Crossclaim against Hamner) | Not less than $35,000, and punitive damages of $25 million |
| 5 | Fraud (Crossclaim against Hamner Defendants) | Not less than $35,000, and punitive damages of $25 million |
| 6 | RICO § 1962(a) (Crossclaim against Hamner Defendants, | not less than $36,500 x 3, plus attorneys fees incurred in asserting cross-claims |

|     |                                                                                 |                                                                                                        |
| --- | ------------------------------------------------------------------------------- | ------------------------------------------------------------------------------------------------------ |
|     | jointly and severally)                                                          |                                                                                                        |
| 7   | RICO, § 1962(b) (Crossclaim against Hamner Defendants, jointly and severally)   | not less than $36,500 x 3, plus attorneys fees incurred in asserting cross-claims                      |
| 8   | RICO, § 1962(c) (Crossclaim against Hamner Defendants, jointly and severally)   | not less than $36,500 x 3, plus attorneys fees incurred in asserting cross-claims                      |
| 9   | RICO, § 1962(d) (Crossclaim against Hamner Defendants, jointly and severally)   | not less than $36,500 x 3, plus attorneys fees incurred in asserting cross-claims                      |
| 1-9 | All                                                                             | Trial by jury, AC's costs and attorneys fees of this action, and such other and further relief as the Court may deem just and proper. |

Dated: New York, NY
      October 31, 2013

*/s/ Richard Pu*

_____
Richard Pu (RP 2321)
Attorney for Defendant
Allan Christopher

120 E. 90th St., 10C
New York, NY 10128
(212) 427-3665 (o)